**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division**

| | |
|---|---|
| In re: Seth Blum and Bessy Blum | No. 25-10005-NVA |
| *Debtors.* | Chapter 11, Subchapter V |

**DEBTORS' CHAPTER 11 PLAN DATED APRIL 1, 2025**

**NOW COME SETH BLUM nnd BESSY BLUM,** the Debtors and Debtors in Possession, by Counsel, and hereby submit to creditors this Chapter 11 Plan pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* and the Small Business Reorganization Act ("SBRA"), 11 U.S.C. §§ 1181 *et seq.* (the "Plan").

A detailed discussion of the Plan and its implementation is found herein. The Debtors urge creditors and parties in interest to consult with counsel. Creditors and parties in interest should not rely on any representations not contained in the Plan in evaluating the Plan.

## ARTICLE I – DEFINITIONS AND RULES OF CONSTRUCTION

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

1.1 *"Administrative Bar Date"* means the first Business Day thirty (30) days after the Confirmation Date and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, other than claims for counsel, accountant, and Subchapter V Trustee fees and costs, except as otherwise provided in the Plan.

1.2 *"Administrative Claim"* means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request or motion for payment or approval) of which is timely filed by the Administrative Bar Date.

1.3 *"Allowed Claim"* means a Claim against the Debtor(s): (a) which is listed in the Debtors' Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed, or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4 *"Assets"* means all property, real or personal, in which Debtor has an interest.

1

1.5    **"*Avoidance Actions*"** means proceedings and causes of action of the Debtor under Chapter 5 of the Bankruptcy Code.

1.6    **"*Bankruptcy Code*"** or **"*Code*"** means Title 11 of the United States Code.

1.7    **"*Bankruptcy Court*"** or **"*Court*"** means the United States Bankruptcy Court for the District of Maryland, or, if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.8    **"*Bankruptcy Rules*"** or **"*Rules*"** means: (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.9    **"*Bar Date*"** means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor. The Bar Date for the filing of pre-petition claims against the Debtor was March 12, 2025 (June 30, 2025 for governmental unit claims).

1.10    **"*Business Day*"** means any day except Saturday, Sunday, or other day on which commercial banks in the State of Maryland are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.11    **"*Case*"** means the case commenced by the Debtors under Chapter 11 of the Code pending in the Bankruptcy Court and bearing Case Number -------------

1.12    **"*Cash*"** means United States currency, drafts, checks, deposit accounts, or other cash equivalents.

1.13    **"*Claim*"** means a claim as defined in § 101(5) of the Code.

1.14    **"*Claimant*"** means a Person holding a Claim against the Debtor(s).

1.15    **"*Class*"** means each class of Claims or Interests established and set forth in Article V of the Plan.

1.16    **"*Collateral*"** means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.17    **"*Confirmation*"** means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.18    **"*Confirmation Date*"** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.19    ***"Confirmation Hearing"*** means the hearing under Code § 1128 scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan, as it may be continued from time to time.

1.20    ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming the Plan.

1.21    ***"Creditor"*** means the holder of a Claim.

1.22    ***"Days"*** shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.23    ***"Debtor" or "Debtors"*** means Seth and/or Bessy Blum**.**

1.24    ***"Disputed Claim"*** means a Claim:

(a)    which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended; or

(b)    which is listed as disputed under any provision of this Plan, or

(c)    as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.25    ***"Effective Date"*** means the date that is thirty (30) days after the Confirmation Order becomes a Final Order or April 25, 2022, whichever is later.

1.26    ***"Equipment"*** means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.27    *[Reserved]*.

1.28    ***"Estate"*** means the bankruptcy estate of the Debtor.

1.29    ***"Executory Contracts"*** means all contracts, including unexpired leases, to which the Debtor is or was a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.30    ***"Final Decree"*** means the Final Order of the Bankruptcy Court that closes the Case.

1.31    ***"Final Order"*** means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either: (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari

has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.32 *"Inventory"* means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.33 *"Lien"* has the meaning set forth in §101(37) of the Code.

1.34 *"Material Default"* of the Debtor shall occur if: (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 30 calendar days after the date of receipt of the notice of default either: (i) to cure the default, or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.35 *"Miscellaneous Assets"* means Assets other than Real Property, Inventory, Equipment, Accounts Receivable, or Avoidance Actions.

1.36 *"Person"* means an individual, a corporation, an LLC, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any political subdivision thereof, or other legal entity.

1.37 *"Petition Date"* means January 1, 2025, the date on which the voluntary petition for relief under the Code was filed by the Debtors.

1.38 *"Plan"* means this Plan, as it may be amended from time to time.

1.39 *"Priority Claim"* means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim, a Professional Claim, or a Priority Tax Claim.

1.40 *"Priority Tax Claim"* means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll, or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.41 *"Professional"* means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.42 *"Professional Claim"* means any Claim for compensation or reimbursement of a Professional that will be paid through the Plan.

1.43 *"Proof of Claim"* means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.44    ***"Rejection Claim"*** means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.45    ***"Schedules"*** means the schedules of assets and liabilities and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.46    ***"Secured Claim"*** means any Claim, debt, or demand against the Debtor as determined in accordance with § 506(a) of the Code that is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing or as otherwise expressly treated in the Plan.

1.47    ***"Subchapter V Trustee"*** means Monique Desiree Almy, the appointed trustee under Code § 1183, or such successor trustee who is or shall be appointed.

1.48    ***"Unexpired Lease"*** means a lease of personalty or realty that had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.49    ***"Unliquidated Claim"*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.50    ***"Unsecured Claim"*** means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II - SUMMARY OF PLAN AND CONFIRMATION REQUIREMENTS

### A.    *Repayment of Creditors*

The Plan provides for payment of administrative expenses, priority claims, and secured creditors in full, either in cash or in deferred cash payments, and provides for payments to unsecured creditors in an amount greater than they would receive in the event of a Chapter 7 liquidation. Funds for implementation of the Plan will be derived from the Debtors' income, from the sale of real estate, and from rent.

This document contains a detailed discussion of the Plan and its implementation. The Plan is a legal document and upon confirmation will become binding on the Parties. Creditors should read the Plan in its entirety, rather than relying on this summary. The Debtor urges creditors and other parties in interest to consult with independent counsel in connection with their analysis of the Plan.

### B.    *Confirmation Requirements*

If all the applicable requirements of Code § 1129(a), other than paragraphs (8), (10), and (15) of that section, are met with respect to a Plan, the Court, on request of the Debtor, shall confirm the Plan notwithstanding the requirements of such paragraphs if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

In order to be confirmed (i.e., approved) by the Court, the Plan or its proponent must (among other requirements set forth in Code §§ 1129 and 1191):

a.    Disclose all compensation paid or promised for professional services rendered or to be rendered in connection with the case;

b.    Disclose the identity and affiliations of all officers to serve after the Plan is confirmed and the compensation of any insiders to be employed after Confirmation;

c.    Propose to pay each member of an impaired class of Claimants who has not accepted the Plan property at least equal in value to what the Claimant would receive if the Debtors' assets were liquidated on the date of the Confirmation Hearing, and distributed to Creditors according to their rights and priorities under law;

d.    Propose to pay all Administrative Claims in full;

e.    Propose to pay all Priority Claims in full in deferred payments or cash;

f.    Propose to pay all Priority Tax Claims in full within five years after the order for relief in this case, in a manner not less favorable than the non-priority unsecured claims.

The Code requires that the Court hold a Confirmation Hearing with notice to all Creditors. The Confirmation Hearing will be scheduled after filing this plan to be held before the Honorable Nancy V. Alquist, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Maryland, 101 W. Lombard Street, Baltimore, Maryland 21201. The Confirmation Hearing may be adjourned or continued by the Court without further notice except for an announcement made of the adjourned or continued date made at the Confirmation Hearing.

At the Confirmation Hearing, the Court shall determine whether the requirements of the Code have been satisfied, in which event the Court shall enter a Confirmation Order confirming the Plan. To confirm the Plan, either all classes of creditors must agree to accept the Plan (a "Consensual Plan"), or, in addition to the requirements stated *supra,* the Plan must not discriminate unfairly, and must be "fair and equitable".

A plan does not discriminate unfairly within the meaning of the Code if no Class receives more than it is legally entitled to receive for its Claims or Equity Interests. The Code establishes different "fair and equitable" standards for Secured and Unsecured Claims.

With respect to a Secured Claim, a plan may be "fair and equitable" if: (1) the impaired Secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its liens; (2) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (1) and (3) hereof, or (3) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the plan.

Additionally, as to all claims, to be "fair and equitable," the Plan must provide that, as of the Effective Date of the Plan, all of the Debtor's projected disposable income to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the Plan, will be applied to make payments under the Plan; or the value of the property to be distributed under the Plan in such period is not less than the projected disposable income of the Debtor.

"Projected Disposable Income" is defined as the income that is received by the Debtor and that is not reasonably necessary to be expended for the maintenance or support of the Debtor or a dependent of the Debtor, a domestic support obligation that first becomes payable after the date of the filing of the petition, or the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

The Debtors must show that they can make all payments under the Plan, or that there is a reasonable likelihood that the Debtors will be able to make all payments under the Plan and the Plan provides appropriate remedies to protect the holders of claims or interests if payments are not made.

## ARTICLE III - REQUISITE DISCLOSURES

A.    ***Representations Limited***

NO REPRESENTATIONS CONCERNING THE DEBTOR, PARTICULARLY RE-GARDING FUTURE BUSINESS OPERATIONS OR THE VALUE OF THE DEBTOR'S AS-SETS, HAVE BEEN AUTHORIZED BY THE DEBTOR EXCEPT AS SET FORTH IN THIS STATEMENT. YOU SHOULD NOT RELY ON ANY OTHER REPRESENTATIONS OR IN-DUCEMENTS PROFFERED TO YOU TO SECURE YOUR ACCEPTANCE OR REJECTION IN ARRIVING AT YOUR DECISION IN VOTING ON THE PLAN. ANY PERSON MAKING REPRESENTATIONS OR INDUCEMENTS CONCERNING ACCEPTANCE OR REJECTION OF THE PLAN SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR AT THE AD-DRESS BELOW. FOR VARIOUS REASONS, THE RECORDS OF THE DEBTOR PRIOR TO PREPARATION OF THIS PLAN MAY NOT HAVE BEEN COMPLETE AND THE ACCU-RACY OF THE INFORMATION SUBMITTED WITH THIS STATEMENT IS DEPENDENT ON INFORMATION AVAILABLE TO THE DEBTOR WITH THE ASSISTANCE OF COUN-SEL. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO PROVIDE THE MOST AC-CURATE INFORMATION AVAILABLE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY. THERE ARE NO KNOWN INACCURACIES. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO EN-SURE THAT THE ASSUMPTIONS ARE VALID AND AS ACCURATE AS CAN BE MADE UNDER THE CIRCUMSTANCES, NEITHER THE DEBTOR NOR THE DEBTOR'S ATTOR-NEYS UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE ASSUMPTIONS OR PROJECTIONS.

NO FORMAL APPRAISALS HAVE BEEN UNDERTAKEN OF THE DEBTOR'S PROPERTY EXCEPT WHERE STATED. THE VALUES PLACED THEREON AND SUMMA-RIZED BELOW ARE THE DEBTOR'S BEST ESTIMATE OF THE VALUE OF THE PROP-ERTY AS OF THE TIME OF THE FILING OF THE PLAN AND THIS DISCLOSURE STATE-MENT. THESE VALUES MAY DIFFER FROM VALUES PLACED ON THE SAME PROP-ERTY AT THE TIME OF FILING OF THE PETITION FOR RELIEF AND THE SUBSE-QUENT SCHEDULES.

### B.  *Brief history of Business Operations of the Debtor*

In addition to being employed in the banking industry, the Debtors are in the business of owning and operating rental property, primarily beach-type rentals.   The Debtors acquired and have been operating three beach rentals in Lewes and Selbyville, Delaware, and North Topsail Beach, NC, and a residential rental in Baltimore County MD.

### C.    *Events Leading to Bankruptcy*

Debtors acquired the Selbyville property by way of an unsecured loan from Mr. Peter Elmo, with whom Debtor Bessy Blum had engaged in some prior transactions.   The precise terms were disputed in many respects, and Mr. Elmo commenced litigation in Maryland against the Debtors on which the Debtors spent a large amount on legal fees.  Unbeknownst to the

8

Debtors, Mr. Elmo also brought suit in Delaware and obtained a default judgment which was then docketed as lien on their Maryland properties.  The litigation expense was compounded by a loss of the Debtors' prior employment.  As a result, and to ensure that the Elmo liens would be avoidable as preferences, the Debtors filed for bankruptcy relief under Subchapter V of Chapter 11 on January 1, 2025, within 90 days of the Delaware judgment.

### D.  *Procedural Posture of the Bankruptcy Case*

On January 1, 2025 (the "Petition Date"), the Debtors filed a voluntary petition in this Court for reorganization relief under SBRA provisions of Chapter 11 of title 11 of the U.S. Code. The Debtors continue to hold the assets of the estate as Debtors-in-Possession pursuant to Code §§ 1107(a) and 1108. Monique D. Almy was appointed the Subchapter V Trustee herein.

There has been no significant litigation during the case.  Debtors, with the assistance of the Trustee, have reached agreement with Mr. Elmo to release his liens, they have sought and obtained the voluntary reclassification of the Atlantic Financial FCU claim to be treated as unsecured, and they have reached agreement with Merrill Thomas to accept the return of an escrowed real estate purchase deposit in lieu of his claim.

### E.  *Assets*

The Debtors' principal assets are five parcels of improved real estate: In addition, the Debtors own two cars (one subject to a lien), household items, modest bank accounts, retirement accounts, and 5229 plans, which are mostly exempt, some largely uncollectible small judgments, and an outstanding $14,000 loan payable to them.

As indicated in the Chapter 7 Liquidation Analysis found in Section IV, it is estimated that, were the Debtors' case filed under Chapter 7, there would be about $600,000 available for distribution to unsecured creditors after the payment of liens, exemptions, and the cost of liquidation.

The Debtors, after a good-faith analysis of any such potential claims, does not intend to pursue any preference, fraudulent conveyance, or other avoidance actions.   Creditor Peter Elmo has agreed to release his judgment liens on Debtors' real estate, which would eliminate the need to file a preference avoidance action to that effect.

### F.  *Creditors Committee/Trustee*

The Court has not ordered the appointment of a Committee of Creditors pursuant to Code § 1102(a)(3). Monique D. Almy has been appointed as the Subchapter V Trustee pursuant to Code § 1183. No other trustee or examiner has been appointed.

### G.  *Professionals*

The Debtor has retained the firm of Chung & Press, P.C., which appointment has been approved by the Court.

Chung & Press, P.C., expects to file a fee application for approximately a total of $15-20,000.00, which is subject to Court approval under Code § 330.   That amount is estimated, and may change based on developments in the case.

Monique D. Almy was appointed as the Subchapter V Trustee. It is estimated that her total fees and costs are approximately $5-10,000.00, which are subject to Court approval under Code § 330.

H.    ***Officers/Directors and Compensation***

N/A – the Debtors are individuals.   Debtors' compensation from  their employment is disclosed on Schedules I-J, attached hereto.

### ARTICLE IV – ANALYSIS OF LIQUIDATION VALUE OF THE ESTATE

If liquidated under Chapter 7, the following is an analysis of what would be available to pay unsecured creditors.

Assets:

Real Property:

3317 Woodvalley Dr. (residence)
   Value $800,000.00
   Less 10% costs of sale $80,000.00
   Mortgage: $544,427.83
   Exemption: $27,900
      NET: $147,672.17

114 Calinda Cay Ct. (selling – estimated net equity $100,000)

8450 Loch Raven Blvd.
   Value $281,800
   Less 10% costs of sale: $28,180
   Mortgage $229,554.39
   Exemption $1.00
      NET: $24,064.61

33796 Freeport Dr.
   Value $525,000

Less 10% costs of sale: $52,500
Less mortgages $321,480.57
     and $180,000
Exemption $1.00
    NET: $0.00

11486 W. Sand Cove Rd. (selling – estimated net equity $300,000)

Personal property

Audi Q7 $50,000 less $48,692.32 lien, $1.00 exemption, NET: $1306.68
Lexus RX350  $20,000, Exempt $6000, NET $14,000
Sports Helmets $500, lien (SBA) $120,000 – NET $0.00
Non-exempt bank deposits $2500
Yupa Loan $14,000, $1546 exempt NET $12,454
Judgments: unknown

(Plus fully exempt household goods, clothing, jewelry, and retirement and 529 accounts)

NET LIQUIDATION VALUE $601,997.46 before hypothetical Chapter 7 expenses

NET LIQUIDATION VALUE of property being retained: $189,543.46, before hypothetical Chapter 7 expenses (Net proceeds of Sand Cove, Calinda Cay, and Yupa Loan are being directly to creditors in addition to the quarterly payments totaling the net liquidation value.

Less: Administrative claims: C11 Professionals $25,000
                C7 Trustee commission on $2,700,000: $104,250
                C7 Trustee Professionals: $20,000
                   Total $149,250
Less: Priority claims:  $38,910

Total: $1383.46 plus the net proceeds of Sand Cove, Calinda Cay, and Yupa Loan.

As such, after payment of secured, priority and administrative claims, the distribution to unsecured creditors in a Chapter 7 liquidation would be about $401,383.46.   This plan proposes $79,200 in quarterly payments plus the net proceeds from liquidating 2 properties (est. $400,000 less $63,910 for priority claims and estimated administrative expenses), total $415,290, plus collection on the Yupa loan.

To the extent the taxes for 2024 are other than as estimated by the IRS, the liquidation analysis will not change, but it could increase or decrease the net distribution to general unsecured creditors.

**ARTICLE V – CLASSIFICATION AND TREATMENT OF CLAIMS**

The Plan establishes 11 classes of claims, plus two categories of unclassified claims (for administrative expenses and priority taxes). The classes of claims are identified and treated as follows:

### A.    Unclassified Claims

1.    *Administrative Expenses.* Pursuant to Code § 1191(e), Administrative Expense claims approved and allowed by the Court shall be paid in full upon the sale of Debtors' real property at 11486 W. Sand Cove Rd. and 114 Calinda Cay Ct. (or upon the Effective Date if later),  or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. Administrative claims that by their terms are not due and payable shall be paid when due.  Administrative claims where all or a portion of awarded fees are being held by counsel in escrow may be paid upon allowance by the Court to the extent of such escrowed sums, with any balance to be paid as provided above.

The total professional fees to Debtor's counsel are estimated to be approximately $15-20,000.00, partially covered by the prepetition retainer. The Subchapter V Trustee's fees are estimated at approximately $5-10,000.00.    There may be capital gains tax due from the sale of 11486 W. Sand Cove Rd. and 114 Calinda Cay Ct., which shall be paid as an administrative expense.

The Debtors are unaware of any other unpaid administrative expense claims.


B.    *Priority Taxes.*

1.    The Internal Revenue Service filed a priority claim (part of Claim No. 16) in the amount of $36,810.08, including an estimate for 2024.  The actual tax amount due for 2024 has yet to be determined as the Debtors are still awaiting information needed to complete their returns. This claim, to the extent allowed, and any allowed priority tax claim timely filed by the Comptroller of Maryland, shall be paid in full, with statutory interest, upon the sale of Debtors' real property at 11486 W. Sand Cove Rd. and 114 Calinda Cay Ct.

### Classified Claims and Interests

A.    *Class A (Priority (non-tax) Claims)*: Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. The only claim in this class is the scheduled/unfiled claim for a $2100 security deposit by Debtors' tenant Blanca Amaya.  That claim will be deposited into an escrow account on or before the effective date of the plan and shall be paid to Ms. Amaya (subject to any allowed charges against it under the lease) upon termination of her tenancy.[1]  In the unlikely event that there are any other allowed claims in Class A, they shall be paid in full, in cash, by the Debtor on the Effective Date of the

---

[1] Merrill Thomas (Claim #31) has agreed to withdraw his claim once he receives his real estate contract deposit back from the escrow agent.  Debtors will cooperate to the extent necessary to ensure such funds are released to him.

Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan.  This class is not impaired.

B.     *Class B (Internal Revenue Service Secured Claim).*   Class B is the purported secured claim of the Internal Revenue Service.   As the tax lien was filed against Bessy (Henriquez) Blum in Baltimore City where she never resided (the address on the tax lien is in Baltimore County), and Debtors do not own property in Baltimore City, the secured claim shall be valued at zero, with the balance ($85,495.99) treated as a general unsecured claim.   These class, being for $0, is not impaired.

C.     *Class C (VW Credit Secured Claim).*  Class C consists of the secured claim of VW Credit (Proof of Claim 21), secured against Debtor's Audi Q7 automobile.  This creditor will retain its lien and Debtor will cure any arrears on the Effective Date and continue to pay the Class C claim pursuant to its terms.   This class is not impaired.

D.     *Class D (Nationstar Loch Raven Secured Claim).*  Class D consists of the secured claim of Nationstar Mortgage/Sailfish Servicing (Proof of Claim 27), secured against Debtor's rental real estate located at 8450 Loch Raven Blvd., Baltimore, MD 21286.  This creditor will retain its lien and Debtor will cure any arrears on the Effective Date and continue to pay the Class D claim pursuant to its terms.   This class is not impaired.

E.     *Class E (Nationstar Lewes Secured Claim).*  Class E consists of the secured claim of Nationstar Mortgage/Lakeview Servicing (Proof of Claim 30), secured against Debtor's rental real estate located at 33796 Freeport Dr, Lewes, DE 19958.  This creditor will retain its lien and Debtor will cure any arrears on the Effective Date and continue to pay the Class E claim pursuant to its terms.   This class is not impaired.

F.     *Class F (Presidential Bank/Calinda Cay).*   Class F consists of the secured claim of Presidential Bank (Proof of Claim 32), secured against Debtor's rental real estate located at 114 Calinda Cay Ct.   This creditor will retain its lien and shall be paid in full upon the sale of 114 Calinda Cay Ct.  This class is not impaired.

G.     *Class G (Presidential Bank/Sand Cove).*  Class G consists of the secured claim of Presidential Bank (Proof of Claim 33), secured against Debtor's rental real estate located at 11486 W Sand Cove Rd.   This creditor will retain its lien and shall be paid in full upon the sale of 11486 W Sand Cove Rd.  This class is not impaired.

H.     Class H (Shellpoint Secured Claim).  Class H consists of the secured claim of Shellpoint Mortgage (scheduled), secured against Debtor's residence located at 3317 Woodvalley Dr.  This creditor will retain its lien and Debtor will cure any arrears on the Effective Date and continue to pay the Class H claim pursuant to its terms.   This class is not impaired.

I.     *Class I (Signature Lewes Secured Claim).*  Class I consists of the secured claim of Signature FCU (scheduled), secured against Debtor's rental real estate located at 33796 Freeport Dr, Lewes, DE 19958.  This creditor will retain its lien and Debtor will cure any arrears on the

Effective Date and continue to pay the Class I claim pursuant to its terms.   This class is not impaired.

J.   *Class J (SBA Secured Claim).*  Class J consists of the secured claim of the U.S. Small Business Administration, secured against the non-vehicle personal property of Debtor Seth Blum only, to the extent a UCC-1 filing and security agreement can attach and perfect a lien to such property.  The lien of the Class J claim shall be avoided under 11 U.S.C. § 522(f)(1)(B) on Debtor's household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor, and pursuant to 11 U.S.C. § 544(a) to the extent such lien is unperfected (i.e., vehicles and deposit accounts).   The lien, accordingly, only remains and shall be retained by the SBA as to Debtor's sports helmets ($500), which secured claim shall be paid in full, with contractual post-petition pre-confirmation interest on such amount, on the Effective Date.   This class is not impaired.

K.   *Class K (General Unsecured Claims).* Class K consists of all allowed general unsecured claims against the Debtors.  Class K claims shall be paid $79,200 without interest, in equal quarterly payments over 12 quarters (3 years).   In addition, the Class K creditors shall be paid all of the remaining net proceeds of the sale of Debtors' real property at 11486 W. Sand Cove Rd. and 114 Calinda Cay Ct., after payment of administrative expenses (including capital gains tax) and priority claims, as well as any money collected on the judgments in favor of Debtor Bessy Blum, and the repayment of the loan $14,000 due from Carlos T. Yupa (net of Debtor's $1546 exemption), net of any unrecovered fees and costs incurred in such collection.

The first quarterly payment ($6600/quarter) shall be made sixty (60) days after the Effective Date of the Plan, with subsequent payments being made every three months thereafter until the total sum due has been paid.  This class is impaired.

### As to All Claims

The right to object to all claims is reserved.  The payment on any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in the undersigned counsel's attorney trust account (or an interest bearing account if over $10,000) until a Final Order is entered, and shall be paid to the creditor, distributed to the holders of other allowed claims, or refunded to the Debtor, as appropriate, upon entry of such a Final Order.  Payments on claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court.  No distribution shall be made on any claim until the cumulative distribution on that claim equals at least $20.00, except that the final distribution to any class shall distribute all remaining funds due to each creditor without regard to amount.  Any check mailed to the proper address and returned by the post office as undeliverable, refused by the creditor, or not deposited within 180 days, shall be void and the funds may be retained by the Debtors.  Nothing herein shall constitute a waiver of the Debtors' right to object to any claim or an acknowledgement that such claim is valid or allowable.

## ARTICLE VI - IMPLEMENTATION OF PLAN

A. Funds for implementation of the Plan will be derived from the Debtor's income from wages, from rentals, and from liquidating assets.   As set forth on Schedules I-J, attached, Debtors have approximately $2200/month disposable income, which they project will continue over the term of the plan, from their employment and net rental income on the two retained rental properties.

The Debtors will sell the Calinda Cay and Sand Cove properties, with closing to occur within 6 months from confirmation, and likely well before that.   While there can be no guarantees about the sale price, they expect to net about $300,000 and $100,000 from them, respectively, which will be paid to creditors as described above.

Debtors will pursue collection of the Carlos Yupa loan, and the judgments, to the extent they and their legal counsel deem continued collection efforts to be cost-effective, and shall pay the net proceeds to creditors as described above.

B.      If the Debtors are unable for any reason to make the quarterly payments or any other payments required by this Plan, Debtors may sell or refinance one or more of the properties or other assets, satisfying any applicable claim(s) secured by such property(ies)/assets in full therefrom, and shall apply the net proceeds to any missed payments due under the Plan, and then to unpaid administrative expenses, priority claims, and any unpaid Class K claims until the amount due under the plan is paid in full, in that order.

C.      Pursuant to Code § 1146(a), the making or delivery of any deed, deed of trust or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, bills of assignments, bills of sale, or deeds-in-lieu of foreclosure executed in connection with any of the transactions contemplated under the Plan (including but not limited to the foregoing sale(s) under A or B above), including but not limited to the private sale or public auction of any Property shall not be subject to any stamp tax, sales tax, transfer tax, vehicle excise tax or other similar tax. The appropriate state or local government officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment pursuant to Code § 1146(a).

D.      The Debtors shall retain the Assets of the estate (except as otherwise provided in this Plan) and shall therewith operate their business and personal affairs and pay ordinary living and business expenses while paying creditors the amounts set forth in this Plan. Consistent with the provisions of this Plan and subject to any releases provided herein, the Debtor reserves the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue its claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

## ARTICLE VII – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Debtor's lease as landlord of the Loch Raven property with Blanca Amaya shall be deemed assumed upon confirmation.  No cure is required (see above re security deposit).

Any other prepetition Executory Contracts and Leases in effect as of the Effective Date and not specifically rejected, assumed, or assumed and assigned will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Confirmation Date. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, or the Debtor's Estate, Assets, or properties. All Rejection Claims shall be Class K General Unsecured Claims.

\

## ARTICLE VIII – RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtor and the Debtor's operations for the following purposes until the Court enters an Order closing the case:

A.      To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part;

B.      To hear and determine all adversary proceedings and contested matters;

C.      To allow and approve or disapprove any administrative expenses not previously allowed;

D.      To determine and resolve questions concerning the existence of defaults under the Plan;

E.      To modify the Plan pursuant to Code § 1193;

F.      To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G.      To issue any Order necessary to carry out the Plan.

Notwithstanding the foregoing, the Confirmation Order shall entitle the Debtor to manage the Debtor's financial affairs, including the sale, disposition, or lease of assets, without further

Order of the Court, and shall permit the Debtor, in the Debtor's discretion, to obtain new and additional credit and/or loans from any source, which credit or loans may be secured by the Debtor's assets, without further Order of the Court.

## ARTICLE IX – MODIFICATION OR WITHDRAWALS OF PLAN

The Debtor may alter, amend, or modify the Plan under Code § 1193 at any time before the Confirmation Date, so long as the Plan, as modified, meets the requirements of Code §§ 1122 and 1123, with the exception of subsection (a)(8) of § 1123. Following the Confirmation Date but before the Effective Date, the Debtor may also alter, amend, or modify the Plan under Code § 1193. The Debtor may revoke or withdraw the Plan before the Confirmation Date. If the Plan is revoked or withdrawn before the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn before the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtor with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to Code § 1193.

## ARTICLE X – MISCELLANEOUS PLAN PROVISIONS

The Debtors shall act as disbursing agent to make the required distributions under the Plan.

No creditor may take any collection action against Debtors or property of the estate or of the Debtors on any Claim or debt scheduled or provided for under this Plan so long as Debtors are not in Material Default in performing their obligations to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtors pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

Except as specifically provided in this Plan, the obligations to creditors that Debtors undertake in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtors' obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under Maryland law (for claims as to only one of the joint Debtors, such liability/cause of action shall only run against the Debtor liable on the claim). To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

Date: April 1, 2025

Respectfully submitted,

 /s/ Daniel M. Press
Daniel M. Press, #07300
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 734-3800
(703) 734-0590 fax
dpress@chung-press.com

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Seth L Blum |
| | First Name     Middle Name     Last Name |
| Debtor 2 | Bessy G Blum |
| (Spouse, if filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | District of Maryland |
| Case number (If known) | 25-10005 |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

Official Form 106I
# Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ☑ Employed  ☐ Not employed | ☑ Employed  ☐ Not employed |
| Occupation | | Office Leader | Business banker |
| Employer's name | | Pinnacle Bank | CFG Community Bank |
| Employer's address | | 150 3RD AVENUE SOUTH, SUI | 2455 House St |
| | | Number     Street | Number     Street |
| | | Nashville, TN 37201 | Baltimore, MD 21230 |
| | | City          State     ZIP Code | City          State     ZIP Code |
| How long employed there? | | 7 months | 2 months |

## Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 13,363.74 | $ 10,050.00 |
| 3. **Estimate and list monthly overtime pay.** | 3. | + $ 0.00 | + $ 0.00 |
| 4. **Calculate gross income.** Add line 2 + line 3. | 4. | $ 13,363.74 | $ 10,050.00 |

Official Form 106I                    Schedule I: Your Income                    EXHIBIT: SCHEDULES I-J                    page 1

Debtor 1  Seth L Blum & Bessy G Blum

First Name    Middle Name    Last Name

Case number *(if known)* 25-10005

|  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|
| Copy line 4 here ........................................................ → 4. | $ 13,363.74 | $ 10,050.00 |

5. List all payroll deductions:

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. Tax, Medicare, and Social Security deductions | 5a. | $ 2,331.38 | $ 2,319.48 |
| 5b. Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ 0.00 |
| 5c. Voluntary contributions for retirement plans | 5c. | $ 2,133.32 | $ 0.00 |
| 5d. Required repayments of retirement fund loans | 5d. | $ 0.00 | $ 0.00 |
| 5e. Insurance | 5e. | $ 1,080.74 | $ 0.00 |
| 5f. Domestic support obligations | 5f. | $ 0.00 | $ 0.00 |
| 5g. Union dues | 5g. | $ 0.00 | $ 0.00 |
| 5h. Other deductions. Specify: Disability, ID Theft Buy Up | 5h. + $ 30.40 | + $ 14.00 |
| Legal | | $ | $ 20.00 |
| | | $ | $ |
| | | $ | $ |

6. **Add the payroll deductions.** Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g + 5h.    6.    $ 5,575.84    $ 2,353.48

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.    7.    $ 7,787.90    $ 7,696.52

8. List all other income regularly received:

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 8a. Net income from rental property and from operating a business, profession, or farm<br>Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ 120.00 |
| 8b. Interest and dividends | 8b. | $ 0.00 | $ 0.00 |
| 8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive<br>Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. Unemployment compensation | 8d. | $ 0.00 | $ 0.00 |
| 8e. Social Security | 8e. | $ 0.00 | $ 0.00 |
| 8f. Other government assistance that you regularly receive<br>Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.<br>Specify: | 8f. | $ 0.00 | $ 0.00 |
| 8g. Pension or retirement income | 8g. | $ 0.00 | $ 0.00 |
| 8h. Other monthly income. Specify: | 8h. + $ 0.00 | + $ 0.00 |

9. **Add all other income.** Add lines 8a + 8b + 8c + 8d + 8e + 8f +8g + 8h.    9.    $ 0.00    $ 120.00

10. **Calculate monthly income.** Add line 7 + line 9.
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.    10.    $ 7,787.90  +  $ 7,816.52  =  $ 15,604.42

11. State all other regular contributions to the expenses that you list in *Schedule J.*

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*

Specify:    11. + $

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information,* if it applies    12.    $ 15,604.42

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**

☑ No.

☐ Yes. Explain:

**Fill in this information to identify your case:**

Debtor 1    Seth L Blum
_First Name_      _Middle Name_      _Last Name_

Debtor 2    Bessy G Blum
(Spouse, if filing) _First Name_    _Middle Name_    _Last Name_

United States Bankruptcy Court for the:   District of Maryland
                                                  (State)

Case number   25-10005
(If known)

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J

# Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:   Describe Your Household

1. **Is this a joint case?**

 ☐ No. Go to line 2.
 ☑ Yes. **Does Debtor 2 live in a separate household?**
       ☑ No
       ☐ Yes. Debtor 2 must file Official Form 106J-2, _Expenses for Separate Household of Debtor 2._

2. **Do you have dependents?**

 Do not list Debtor 1 and Debtor 2.

 Do not state the dependents' names.

 ☐ No
 ☑ Yes. Fill out this information for each dependent..........................

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| Child | 3 | ☐ No ☑ Yes |
| Child | 6 | ☐ No ☑ Yes |
| Child | 11 | ☐ No ☑ Yes |
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**

 ☑ No
 ☐ Yes

## Part 2:   Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental _Schedule J_, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on _Schedule I: Your Income_ (Official Form 106I.)

| | | **Your expenses** |
|---|---|---|
| 4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot. | 4. | $ 3,792.00 |
| If not included in line 4: | | |
| 4a. Real estate taxes | 4a. | $ 0.00 |
| 4b. Property, homeowner's, or renter's insurance | 4b. | $ 0.00 |
| 4c. Home maintenance, repair, and upkeep expenses | 4c. | $ 500.00 |
| 4d. Homeowner's association or condominium dues | 4d. | $ 0.00 |

Debtor 1    Seth L Blum & Bessy G Blum             Case number *(if known)* 25-10005

First Name     Middle Name     Last Name

| | | Your expenses |
|---|---|---|
| 5. | **Additional mortgage payments for your residence**, such as home equity loans | 5. $ 0.00 |
| 6. | **Utilities:** | |
| | 6a. Electricity, heat, natural gas | 6a. $ 600.00 |
| | 6b. Water, sewer, garbage collection | 6b. $ 0.00 |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. $ 400.00 |
| | 6d. Other. Specify: Security | 6d. $ 150.00 |
| 7. | **Food and housekeeping supplies** | 7. $ 1,800.00 |
| 8. | **Childcare and children's education costs** | 8. $ 1,600.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. $ 100.00 |
| 10. | **Personal care products and services** | 10. $ 200.00 |
| 11. | **Medical and dental expenses** | 11. $ 50.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. $ 600.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ 800.00 |
| 14. | **Charitable contributions and religious donations** | 14. $ 350.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | |
| | 15a. Life insurance | 15a. $ 175.00 |
| | 15b. Health insurance | 15b. $ 0.00 |
| | 15c. Vehicle insurance | 15c. $ 200.00 |
| | 15d. Other insurance. Specify: | 15d. $ 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. $ 0.00 |
| 17. | **Installment or lease payments:** | |
| | 17a. Car payments for Vehicle 1 | 17a. $ 1,238.57 |
| | 17b. Car payments for Vehicle 2 | 17b. $ 0.00 |
| | 17c. Other. Specify: | 17c. $ 0.00 |
| | 17d. Other. Specify: | 17d. $ 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. $ 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. $ 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | |
| | 20a. Mortgages on other property | 20a. $ 0.00 |
| | 20b. Real estate taxes | 20b. $ 0.00 |
| | 20c. Property, homeowner's, or renter's insurance | 20c. $ 0.00 |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. $ 150.00 |
| | 20e. Homeowner's association or condominium dues | 20e. $ 700.00 |

Debtor 1    Seth L Blum
_____    Case number (if known)___25-10005_____
First Name    Middle Name    Last Name

21. **Other**. Specify:_____    21.    +$_____0.00
_____    +$_____
_____    +$_____

22.   **Calculate your monthly expenses.**

22a. Add lines 4 through 21.    22a.   $_____13,405.57

22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 22c. Add line 22a    22b.   $_____

and 22b. The result is your monthly expenses.    22c.   $_____13,405.57

23. **Calculate your monthly net income.**

23a.   Copy line 12 (*your combined monthly income*) from *Schedule I.*    23a.   $_____15,604.42

23b.   Copy your monthly expenses from line 22c above.    23b.  −$_____13,405.57

23c.   Subtract your monthly expenses from your monthly income.
The result is your *monthly net income.*    23c.   $_____2,198.85

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your
mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.
☐ Yes.    Explain here:

CERTIFICATE OF SERVICE

This is to certify that on this 1st day of April, 2025, I caused the foregoing document to be served by CM/ECF on the U.S. Trustee and all parties requesting such notice, as follows:

Monique Desiree Almy malmy@crowell.com,
cbest@crowell.com,
malmy@ecf.axosfs.com,
monique-almy-7127@ecf.pacerpro.com

Hugh M. (UST) Bernstein hugh.m.bernstein@usdoj.gov

Richard J Hackerman Richard@RichardHackerman.com,
6923530420@filings.docketbird.com,
Hackerman.RichardR106256@notify.bestcase.com

Katherine A. (UST) Levin Katherine.A.Levin@usdoj.gov,
amy.busch@usdoj.gov

Jonathan E. Levine jlevine@mbhylaw.com


  /s/ Daniel M. Press           
Daniel M. Press