UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
Baltimore Division

---------------------------------------------------------------X
In re:                                              :     Chapter 11 (Subchapter V)
                                                    :
Seth L Blum and Bessy G Blum                        :     Case No.  25-10005
                                                    :
        Debtors.                                    :
                                                    :
---------------------------------------------------------------X

AFFIDAVIT PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 2014 AND SECTION 327 OF THE BANKRUPTCY CODE

I, ADAM ASK, affirm and declare under penalty of perjury as follows:

1. I am a licensed real estate agent with Northrop Realty, which maintains offices at 209 5th Street, Bethany Beach, Delaware, 19930.

2. I am a licensed real estate agent in the State of Delaware.

3. I submit this affidavit in support of the application of Seth and Bessy Blum (the "Debtors") to employ myself as their real estate agent to represent them in connection with the sale of real estate in Sussex County, Delaware.  Neither I, nor Northop Realty, nor any principal, or associate thereof, insofar as I have been able to ascertain after reasonable investigation, has any connection with the Debtors, nor with their creditors, any other parties-in-interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, except as follows:
[none].

4. The Debtors desire to employ me on a 2.5% (seller-side) commission basis pursuant to the attached standard form listing agreement.   In Delaware, the buyer's agent's commission is typically agreed in the contract for sale, but paid by the seller.

5. Insofar as I have been able to ascertain, Northrop Realty and I are "disinterested persons" because we are not creditors, equity security holders, or insiders of the Debtors; are not

and were never directors, officers, or employees of the Debtors; and do not have any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtors, or for any other reason.

      6.  I will not, while engaged in this case, undertake representation of any other person or entity in connection therewith. As agent, I will represent solely the Debtors (seller), but in order not to exclude clients of Northrop Realty, it is proposed that the brokerage, through other agents, may represent prospective purchasers as well, as is the custom in the real estate business in Maryland and Delaware.

      I declare under penalty of perjury that the foregoing is true and correct.

      Executed on July 21, 2025.

                                                ___/s/ Adam Ask_____
                                                Adam Ask

# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

*This is a legally binding agreement; if not understood, seek competent legal advice prior to signing.*

1. **BROKERAGE ORGANIZATION.** Northrop Realty *(hereinafter referred to as "Listing Broker"),* in consideration of diligent services to be performed is granted the exclusive right to sell my/our Property identified in Section #3 herein from the effective date of this Agreement.

2. **SELLER NAME & MAILING ADDRESS.**
   Seth Blum        Bessy Blum
   3317 Woodvalley Dr        Pikesville, MD 21208
   Email Address: sblum482@yahoo.com        bessy.blum@yahoo.com
   Primary Phone: (410) 371-5668        Secondary Phone: (443) 255-0534

3. **PROPERTY DESCRIPTION.** TAX PARCEL # 533-19.00-941.00        being situated in SUSSEX County, Delaware and further identified as
   11486 W Sand Cove Rd        Selbyville, DE 19975

4. **INCLUSIONS/EXCLUSIONS:** Unless specifically excluded by this Agreement, the listed price shall also include the following, as and if now installed, stored in, or located on the Property: all presently existing plumbing, heating, electrical and central air conditioning systems; and all other permanent or attached fixtures including but not limited to, all existing shutters, awnings, wall to wall carpeting, radiator covers, cabinets, shelves, mirrors fixed in place, attic/exhaust fans, lighting and plumbing fixtures, and landscaping. Certain other now existing items which may be considered personal property, whether installed or stored upon the Property are included, as follows: **(If neither column is checked, item shall be considered excluded.)** ***Should the Sellers Disclosure of Real Property Condition Report differ from the below list of included items, the below list shall supersede; however, the Agreement of Sale will be the final list of what is included or excluded.***

| YES | NO | Item | YES | NO | Item | YES | NO | Item |
|---|---|---|---|---|---|---|---|---|
| X |   | Range with oven |   |   | Draperies/Curtains |   |   | Wall Mounted Flat Screen TV # ___ |
| X |   | Range Hood-exhaust fan | X |   | Drapery/Curtain rods |   |   | Wall brackets for TV # ___ |
| X |   | Cooktop-stand alone |   |   | Shades/Blinds |   |   | Surround sound system & controls |
| X |   | Wall Oven(s) # ___ |   |   | Cornices/Valances |   |   | Attached Antenna/Rotor |
| X |   | Kitchen Refrigerator # ___ | X |   | Furnace Humidifier | X |   | Garage Opener(s) # ___ |
|   |   | with icemaker | X |   | Smoke Detectors |   |   | with remote(s) # ___ |
|   |   | Refrigerator(s)-additional # ___ |   |   | Carbon Monoxide Detectors |   |   | Electronic/Smart Door Locks |
|   |   | Freezer –freestanding |   |   | Wood Stove |   |   | Smart Cameras/Doorbells |
|   |   | IceMaker-freestanding | X |   | Fireplace Equipment |   |   | Smart Thermostat |
| X |   | Dishwasher |   |   | Fireplace Screen/Doors |   |   | Pool Equipment |
| X |   | Disposal | X |   | Electronic Air Filter |   |   | Pool cover |
| X |   | Microwave |   |   | Window A/C Units # ___ |   |   | Hot Tub, Equipment |
| X |   | Washer |   |   | Attic fan |   |   | with cover |
| X |   | Dryer |   |   | Whole house fan |   |   | Sheds/Outbuildings # ___ |
|   |   | Trash Compactor | X |   | Bathroom Vents/Fans |   |   | Playground Equipment |
|   |   | Water Filter |   |   | Window Fan(s) # ___ |   |   | Irrigation System |
|   |   | Water Heater | X |   | Ceiling Fan(s) # ___ |   |   | Backup Generator |
|   |   | Sump Pump |   |   | Central Vacuum |   |   | Water Conditioner (owned) |
|   |   | Storm Windows/Doors |   |   | with attachments |   |   | Water Conditioner (leased) |
| X |   | Screens (if present) |   |   | Intercoms |   |   | Fuel Storage Tank(s) (owned) |
|   |   |   |   |   | Satellite Dish |   |   | Fuel Storage Tank(s) (leased) |
|   |   |   |   |   | with controls & Remote(s) |   |   | Security/Monitoring Systems (owned) |
|   |   |   |   |   |   |   |   | Security/Monitoring Systems (leased) |
|   |   |   |   |   |   |   |   | Solar Equipment (owned) |
|   |   |   |   |   |   |   |   | Solar Equipment (leased) |

Additional Inclusions (Not previously checked):

Additional Exclusions (Not previously checked):

LF1006        Seller's Initials  SB  RB   7/17/2024

©Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified July 17,2024.This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

5. **RENTAL/LEASE.**
   A. The Property ☐ is ☒ is not subject to any tenant rental/lease agreements. Seller will assign all existing leases and transfer security deposits, and any other pre-paid items and rent to Buyer at final settlement. In the event the property is subject to any Rental/Property Management agreements which contain language indicating that such agreement runs with the property and is binding on any Buyer, Seller shall provide a copy of such agreement to any prospective Buyer and such agreement shall become binding on Buyer after closing. Seller authorizes their Rental/Property Management company to release all rental information requested by the listing agent and agrees to cooperate with the transfer of any rental/lease agreements at time of final settlement.

   B. The Property ☐ is ☒ is not subject to any third-party rental/lease agreements such as fuel storage tank leases, solar panel leases, water conditioner leases, security monitoring system leases, or similar agreements or as specified in Section 4 or elsewhere in this Agreement. Seller agrees to cooperate with Buyer in the transferring of any rental/lease agreements prior to final settlement.

6. **LISTED PRICE.** The listed price of the Property is: $ __625,000.00__ unless modified in writing by Seller.

7. **POSSESSION.** Possession is to be conveyed at time of settlement or on such other date agreed to by Seller and Buyer.

8. **EXPIRATION.** This Agreement will expire at 11:59 pm __05/31/2025__. Listing Broker shall not be obligated to continue to market the Property after an offer has been accepted by the Seller. In the event an Agreement of Sale is ratified during the term of this Exclusive Right to Sell Listing Agreement which subsequently becomes null and void prior to the expiration date herein, the Listing Broker shall continue to market the Property for the duration of this Agreement and any extension thereof. Should any Agreement of Sale ratified during the term of this Exclusive Right to Sell Listing Agreement not go to settlement until after the expiration date herein, any compensation due to Listing Broker under this Listing Agreement shall remain due to Listing Broker no later than the date of final settlement.

9. **CANCELLATION.** Either party may cancel this Agreement upon __30__ days written notice after __1__ days from effective date.

10. **COMPENSATION. Seller acknowledges that there are not any standard Compensation rates and the Compensation in this Agreement is fully negotiable and not set by law, any Board or Association of REALTORS®, any multiple listing service (MLS), or in any manner other than as negotiated between Broker and Seller.** Seller should discuss Compensation and the scope of services to be provided for such Compensation options with Listing Broker or its Designated Agent(s). Listing Brokers can set their own Compensation and fees based on what services are offered and their business model in the competitive marketplace. Seller shall pay Compensation as follows:

   **A. Listing Broker Compensation.**
   Seller agrees to pay Listing Broker Compensation of __2.5__ (% of the gross selling amount OR flatfee) plus $__495.00__ for services rendered, if, during the term of this Agreement (or extension): (1) Listing Broker or other Cooperating Broker produces a Buyer ready, willing and able to purchase subject Property at the listed price/terms contained in this Agreement or other price/terms acceptable to Seller; or (2) subject Property is sold or exchanged by any person whomsoever including Seller.

   Seller acknowledges that a Buyer may choose to be unrepresented. In such event, the Listing Broker may need to perform additional ministerial tasks that would otherwise be performed by a Buyer's Broker. Seller agrees to pay Listing Broker an additional Compensation of __-__ (% of the gross selling amount OR flat fee) plus __-__ for additional services rendered in the event the Buyer is not represented by any Broker.

   **B. Buyer's Broker Compensation.**
   Seller acknowledges that offering Compensation to a Buyer's Broker is not required by law. Buyer Broker Compensation may be discussed during negotiations at the time an offer from a Buyer is received.

   Other Compensation models may be negotiated in Section 25: Additional Terms of this Agreement or on a separate addendum attached hereto.

   All Compensation specified above shall also be due as specified above in the event subject Property is sold, conveyed, or otherwise transferred by Seller within __180__ days after expiration or cancellation of this Agreement to a Buyer introduced to subject Property by Listing Broker or other cooperating Broker during the term of this Agreement. (This provision does **NOT APPLY** in the event subject Property is listed with another Broker at time of sale).

   If not previously paid, the settlement attorney is hereby irrevocably authorized and directed to collect the Compensation as specified in this Agreement and pay the same to the Broker at final settlement as a convenience to the parties, and not as a limitation upon Seller's liability to pay the Compensation.

11. **SELLER CONCESSIONS.** ☐ Yes ☐ No
    Seller concessions may be offered by Sellers to assist Buyers with closing costs but are not required. Seller authorizes Listing Broker to market Seller concessions tobepaidat closing with an acceptable offer.

Seller's Initials  SB  RB  7/17/2024

LF1006

©Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified July 17,2024.This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

12. **AUTHORITY TO COOPERATE WITH OTHER BROKERS.**
    A. Listing Broker shall be authorized to cooperate with other Brokers retained by prospective Buyers to represent the Buyer's interests (Buyer's Agent).
    B. Listing Broker shall also be authorized to cooperate with other Brokers as subagents of the Listing Broker (subagents).
       ☐ Yes   ☒ No

13. **EXCLUSIVE RIGHT TO SELL.** During the term of this Agreement, or any extension(s) thereof, Seller agrees not to sell or negotiate for the sale of subject Property except through Listing Broker designated herein, nor give any other Listing Broker, firm, or person authorization to sell or negotiate for the sale of subject Property.

14. **DISBURSEMENT OF DEPOSITS.** If the Agreement of Sale provided by the Delaware Association of REALTORS® is used for the transaction, then Seller agrees that the following process shall apply for disbursement of deposits unless modified in the Agreement of Sale. The Seller acknowledges and agrees that deposit monies held on account by a licensed Delaware Real Estate Brokerage Organization (hereinafter referred to as "Escrow Broker") shall only be disbursed under one of the following conditions:
    A. Upon final settlement hereunder; OR
    B. Upon a release being signed by all parties to the transaction authorizing disposition of these funds; OR
    C. At such time as one of the parties to the transaction files suit and the court orders the disbursement of these funds; OR
    D. Escrow Broker follows the notice and disbursement process based on passage of time outlined below; OR
    E. Upon the filing of an interpleader action in the proper court, thereby causing these funds to be deposited with the court.

    <u>Escrow Broker's notice and disbursement process based on passage of time:</u>
    Seller agrees that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days(60 if not specified) after the Settlement Date as specified in the Agreement of Sale (or any written extension thereof) or following the termination of the Agreement, whichever is earlier, then the Escrow Broker holding the deposit monies may, in its sole discretion, but is not obligated to, decide to disburse the deposit monies to the person who, in the good faith of the Escrow Broker, is entitled to receive the deposit monies in accordance with the terms of this Agreement. Prior to making such disbursement, Escrow Broker shall notify all parties, in writing with verification of delivery or to an email address used during the transaction, of Escrow Broker's intention to make the disbursement unless within sixty (60) days of notice, Escrow Broker receives written notice that the dispute is the subject of filed litigation, arbitration, or mediation. If Escrow Broker has received written notice of filed litigation, arbitration, or mediation prior to disbursement, Escrow Broker will continue to hold the deposit monies until receipt of a written disbursement agreement between Buyer and Seller or a final court or binding arbitration order. Seller agrees that the disbursement of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after disbursement is made unless disbursement is according to court or binding arbitration order. Seller agrees that upon disbursement according to this process, Seller shall not have any further right, claim, demand, or action against Escrow Broker regarding the return or disposition of the deposit monies, and Seller shall indemnify and hold Escrow Broker harmless from any and all such rights, claims, demands or actions.

    <u>Interpleader:</u> Should Escrow Broker elect to file an action of interpleader, Seller further agrees and hereby expressly and irrevocably authorize Escrow Broker to deduct from the Deposit all costs incurred by Escrow Broker in the filing and maintenance of such action of interpleader including but not limited to filing fees, court costs, service of process fees and attorneys' fees, up to the full amount of the Deposit(s) held by Escrow Broker.

    <u>Deposits held by Non-broker:</u> The Seller understands disbursement of deposits not held by a licensed Delaware Real Estate Brokerage Organization are not necessarily done in compliance with the language set forth in this Section. In such instance, Seller is advised to consult with legal counsel.

15. **SELLER REPRESENTATION.**
    A. Seller warrants that the information in this Agreement is true and correct to the best of Seller's knowledge and belief and may be used as a basis for presenting the Property to prospective Buyers.
    B. Seller shall indemnify and hold Listing Broker harmless from any claim, damages, judgement, and costs, expressly including reasonable attorney fees, arising out of or from any occurrence incident to any mistake, exaggeration, omission, inaccuracy of said information, or escrow dispute, including any omission or inaccuracy on applicable disclosure documents.
    C. Seller hereby agrees to conduct all negotiations pertaining to the sale of the Property through the Listing Broker and cooperate with the Listing Broker fully in the Listing Broker's efforts to sell the Property.
    D. Seller further understands and agrees that Seller, and not the Listing Broker, is responsible for the care and physical condition of the Property, its management, maintenance, and repair.
    E. Seller acknowledges reading and signing the Consumer Information Statement of the Delaware Real Estate Commission.

16. **SELLER OBLIGATIONS.**
    A. Seller will convey to Buyer a good, marketable, fee simple title by deed of special warranty, or assignment of Leasehold estate and/or title to manufactured home, as applicable, free and clear of encroachments that would be shown by a survey, liens, and encumbrances of record, but subject to all existing easements and restrictions of record.
    B. Seller agrees to execute any agreement, deed, leasehold interest assignment or other document(s) necessary to fulfill this Agreement. As appropriate, such documents will contain covenants of warranty conveying good and marketable title to Buyer. Evidence of marketable title may be in the form of a Policy of Title Insurance obtained at expense of Buyer. In the event a title examination discloses title is imperfect and marketable title cannot be delivered by Seller within a reasonable time, Listing Broker will nevertheless be entitled to the full agreed compensation provided herein.
    C. Seller agrees to furnish Listing Broker such documents as necessary and reasonable to bring about the sale of subject Property, such as, but not limited to: proof of ownership, tax records, Property income/expense records, existing rental/lease

LF1006                                                       Seller's Initials  SB  RB   7/17/2024

©Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified July 17,2024.This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

agreements, any current well &/or septic inspection reports, and similar documents, and authorizes the Listing Broker to give this information to prospective Buyers.

D. Taxes, special assessments, water, sewer, and other public charges, ground rent, condominium fees, rental monies, fuel, public utility charges and other fixed charges are to be prorated as of date of settlement unless otherwise designated herein. Seller acknowledges realty transfer tax obligation as applicable.

E. Seller grants Listing Broker permission to use a house key and/or a keyed, combination, or electronic lockbox for the purpose of entering and exiting the Property for showings and inspections. Seller is advised that there may be real estate licensees, appraisers, inspectors, or others who do not subscribe to the Listing Broker's lockbox service but, nevertheless, desire to access Seller's Property.  In such event, some lockbox systems may allow for a unique temporary code or link to be obtained and provided to such individuals for purpose of access,subject to Listing Broker approval as Listing Broker deems appropriate.  In the event the Property is occupied by a tenant, the Listing Broker shall not install a keyed, combination, or electronic lockbox without the tenant's prior written authorization.

F. Seller agrees to refer to Listing Broker all inquiries of Buyer Brokers, Agents or others expressing interest in Seller's Property.

G. If applicable, Seller warrants to Listing Broker and all potential Buyers that all known defects contained in the Property have been fully, accurately, and truthfully disclosed in writing to the best knowledge of the Seller on any Sellers Disclosure of Real Property Condition Report, Radon Disclosure Form, Lead Based Paint Disclosure, or any other applicable disclosure forms, and that no defects have been communicated to the Listing Broker by Seller, either verbally or in writing, that are not contained on those forms. Listing Broker is authorized to convey the aforementioned disclosures to prospective Buyer.

H. Sale may be contingent on Buyer obtaining mortgage financing which may be contingent upon inspections and/or appraisals required by the lender. In this event, Seller agrees to permit access to the Property at reasonable times for such purpose and will ensure that all utilities are on for all inspections until time of settlement.

I. By Delaware law, money may be withheld from a Seller who will not be a resident of Delaware after Settlement. Delaware tax form 5403 is used to calculate the amount of tax required to be withheld from Seller at settlement.

17. **SELLER ACKNOWLEDGMENT.**
   A. Seller recognizes that persons not under the control of Listing Broker,such as other Brokerage Organizations,other Brokerage Organization's Salespersons, prospective Buyers and experts retained by prospective Buyers may come into Seller's house and Property without Listing Broker's supervision through the use of a lockbox and/or key.  Seller is cautioned to safeguard their valuable possessions so as to avoid theft or damage. Seller does hereby expressly assume all risks of loss or damage to the Property and contents which may be caused by the use of the key or lockbox whether or not authorized by Listing Broker. Listing Broker will in no way be responsible for any injury to prospective Buyers, inspectors or appraisers that occur on the Property or any loss or damage to Seller's property.

   B. Seller agrees to indemnify and hold harmless Listing Broker, Listing Broker's Salespersons and employees, Cooperating Brokerage Organizations, their associated Salespersons, the State or local Associations of REALTORS®, and experts retained by a Buyer or prospective Buyer, from and against any and all claims or damages, including their reasonable attorney's fees and costs, arising out of the use of a lockbox and/or key, including but not limited to, claims for loss of property or for injury to persons or property.  Seller shall maintain fire and liability insurance until the time of settlement.  Seller agrees that Listing Broker is not responsible for fire, vandalism, theft, damage or destruction of any nature caused by others during the term of this Agreement.

   C. Seller hereby acknowledges that the Listing Broker may take interior and exterior photographs, prepare virtual tours, and/or use any other media for the purpose of advertising the Property, including multiple listing services, social media, and the internet.  Under certain circumstances, a Buyer accompanied by an Agent may record images of the Property for purposes of facilitating a sale. Listing Broker cannot control unauthorized use of digital or social media.

   D. Seller authorizes Listing Broker to show the Property to prospective Buyers and to place a "for sale" sign on the Property. Once the Property is under an Agreement of Sale, Listing Broker may display a "sale pending/sold" sign on Property until date of final settlement. All signs will be removed upon termination of this Agreement.

   E. [X] Yes  [ ] No   There is a functioning audio/visual surveillance system on the Property. In the event a functioning system is present, **Seller agrees to post clearly visible notice of such at the entrance where potential Buyers may enter the property.**

18. **LISTING BROKER AUTHORIZATION.**
   A. Listing Broker,unless otherwise directed in the Agreement of Sale, is authorized to accept and hold in escrow a deposit to apply towards purchase price. In the event the deposit is forfeited, one-half will be paid to Seller and one-half paid to Listing Broker as compensation, provided Listing Broker's share does not exceed agreed compensation amount. The Listing Broker is irrevocably authorized to collect such compensation prior to disbursement to Seller. If the Agreement of Sale or a Separate Escrow Agreement directs a party other than the Listing Broker to hold the escrow deposit, the Seller authorizes theparty holding the Escrow Deposit todisburse any compensation due to the Listing Broker resulting from a forfeited deposit, or the Seller agrees to promptly pay the Listing Broker any compensation due upon the Seller's receipt of the forfeited deposit.

   B. All advertising, which may include, but is not limited to, magazines, newspapers, internet, signs, and other promotional vehicles, deemed advisable by Listing Broker, is hereby authorized by Seller, and unless otherwise specified, shall be paid by Listing Broker.

   C. Listing Broker is authorized to submit the Property and related documents to any Multiple Listing Service in which Listing Broker is a participant. Listing Broker is authorized to report that the Property is under contract when Owner enters into an agreement of sale and to report all sales information including the sale price and terms with the understanding that the sale price and terms will not be published before settlement.

   D. When submitting the Property to any Multiple Listing Service, Listing Broker shall disseminate Property information in conformity with the Seller's instructions below. The Seller may elect to opt-out of any of the following provisions by checking NO in the corresponding box:

   a. [X] Yes   [ ] No   Seller authorizes the listed Property to be displayed on the Internet.

LF1006                                                                           Seller's Initials  SB  RB   7/17/2024

©Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified July 17,2024.This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

5

    b. ☒ Yes ☐ No   Seller authorizes the numerical address of the listed Property to be displayed on the Internet.
    c. ☐ Yes ☒ No   Seller authorizes the automated valuation of the listed Property.
    d. ☐ Yes ☒ No   Seller authorizes the blogging features associated with the listed Property.

Seller understands and acknowledges that if they answer NO to question (a) above, consumers who conduct searches fo listings on the Internet will not see information about the listed Property in response to their searches. Seller further understands and acknowledges that certain data may be made available on the internet through other sources which the Listing Broker and local MLS cannot control.

E. Listing Broker is authorized to obtain descriptive and factual information from Seller about Property and to update such information as warranted.
F. Inaddition,the Listing Broker will:
    a. Receive delivery of, and present, offers and counteroffers.
    b. Assist the Seller in developing, communicating, negotiating and presenting offers, counteroffers and notices relating to offers and counteroffers.
    c. Answer Seller's questions relating to offers, counteroffers, notices, negotiations and contingencies.
G. Seller is advised that prospective Buyers or cooperating Brokerage Organization may inquire of Listing Broker or Listing Broker's Designated Agent(s) as to whether existing written offer(s) have been received for the purchase of the Property. The disclosure of the existence of written offer(s) could be either beneficial or detrimental to Seller. Such disclosure could result in the interested Buyer making the highest and best offer as promptly as possible, or, such disclosure could result in the interested Buyer electing not to make an offer, therefore, check only one box below;
    a. ☒ Seller does authorize the Listing Broker or Listing Broker's Designated Agent(s) to disclose the existence of other written offers in response to inquiries from prospective Buyers or cooperating Brokerage Organizations.
    b. ☐ Seller does NOT authorize the Listing Broker or Listing Broker's Designated Agent(s) to disclose the existence of other written offers in response to inquiries from prospective Buyers or cooperating Brokerage Organizations.
    c. ☐ Seller will authorize Listing Broker or Listing Broker's Designated Agent(s) at the time a written offer is presented to Seller as to how to proceed with the distribution of appropriate information related to the offer(s) upon inquiries from prospective Buyers or cooperating Brokerage Organizations.

19. **FAIR HOUSING**. All Parties agree to comply with all Fair Housing and Civil Rights laws in the purchase and sale of the Property and further agree specifically not to discriminate against any person because of RACE, COLOR, NATIONAL ORIGIN, RELIGION, CREED, SEX, MARITAL STATUS, FAMILIAL STATUS, AGE, SEXUAL ORIENTATION, GENDER IDENTITY, SOURCE OF INCOME and/or HANDICAP/DISABILITY or any other protected classes, as may from time to time be added or amended by law.

20. **BUYER SUPPLEMENTAL OFFER LETTERS.** Buyer Supplemental Offer Letters involve the common practice among Buyers and their agents of attaching a personalized letter to their offer, aiming to sway the Seller towards accepting their proposal. These letters may include visuals such as photos and videos. It's crucial to be aware that, whether intentionally or unintentionally,Buyer Letters might contain details related to a Buyer's or Seller's protected class or characteristics. Making decisions about accepting an offer based on such protected classes or characteristics is illegal. Please note that the Listing Broker will not assess the content of any Buyer Letters.

21. **HEIRS AND ASSIGNS.** This Agreement is binding upon the parties' respective heirs, personal representatives, successors and assigns.

22. **ADDENDUMS**. Any attached addendum(s) are only applicable if marked **YES** or checked. **NO** or a blank means Seller is waiving the opportunity to include the contingency orclause.  If language in this Agreement and Addendum(s) are in conflict, unless otherwise provided herein, then the addendum(s) will supersede this Agreement.

    ☒ Seller's Disclosure of Real Property Condition Report, unless exempt by State Law
    ☒ Lead Based Paint Disclosure Form, unless exempt by Federal Law
    ☒ Radon Disclosure Form, unless exempt by State law
    ☐ DUCIOA (Delaware Uniform Common Interest Ownership Act) Resale Certification Form
    ☒ DUCIOA (Delaware Uniform Common Interest Ownership Act) Resale Certificate Addendum to Listing Agreement
    ☒ Consumer Information Statement
    ☐ Septic Inspection Report
    ☐ List of Lienholder(s)
    ☒ Other   **Anti-Fraud, Mutual Agreement to Arbitrate**
    ☒ Other   **Affiliated Business Disclosure, Broker Flat Fee**

Seller's Initials  7/17/2024

LF1006

©Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified July 17,2024.This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

23. **HOMEOWNER'S WARRANTY**. Seller is advised that a Homeowner's Warranty may be available. A Homeowner's Warranty is only part of this Agreement if Seller agrees to purchase a warranty. Seller is advised to request information about what is included in the warranty and what is excluded (for example, preexisting conditions) and the amount of the deductible.

24. **ARBITRATION, NOT CLASS ACTION LITIGATION.** [X] **Yes** [ ] **No (only applicable if checked Yes)**
The laws of the State of Delaware govern this Agreement and its interpretation, without regard to the application of conflict of laws. The parties agree that it is their desire and agreement that any controversy arising out of or relating to this Agreement may be exclusively and confidentially resolved through two-party (not class-based) arbitration according to the provisions of the Delaware Uniform Arbitration Act as found in Title 10 Delaware Code Part IV Chapter 57, except that discovery may include no more than a single eight-hour deposition by each side and the exchange of documents that either side reasonably may use at the arbitration hearing. The arbitration hearing shall be conducted by a Delaware lawyer as a single arbitrator. The hearing shall occur in the State of Delaware within 12 months of serving the notice of intent to arbitrate. If the parties cannot agree on choosing the arbitrator, then an arbitrator shall be appointed according to the provisions of the Delaware Uniform Arbitration Act. The prevailing party is entitled to recovery of its legal fees and costs as determined by the arbitrator. Any injunctive relief may also be exclusively pursued before the same arbitrator. Each party waives any right to file an action in court, or to join any class or consolidated action against theother, for any controversy arising from this Agreement. The decisions of the arbitrator will be final and binding on all parties to the controversy, and judgment on the award rendered by the arbitrator may be enforced in court as provided in the Delaware Uniform Arbitration Act. The arbitrator has exclusive power to rule on their own jurisdiction, including the existence, scope,waiver, or validity of this arbitration agreement or to the arbitrability of any claim or counterclaim, and to determine the existence or validity of this Listing Agreement, and for this purpose alone, this arbitration section will be treated as an agreement independent of the validity of this Listing Agreement or its other terms. Each party understands that, in the absence of this Section, there would be a right to litigate disputes through a court, including the right to litigate claims on a class-wide or class-action basis, and that both parties have expressly and knowingly waived those rights and agreed to resolve any controversies through binding arbitration in accordance with the provisions of this Section. Link to Title 10 Delaware code:
**https://delcode.delaware.gov/title10/c057/index.html**

25. **ADDITIONAL TERMS AND CONDITIONS**.
**Seller authorizes Northrop Realty to advertise the property with an offeringof buyer broker compensation in the amount of 1.5 % of the gross sales price**

26. **ENTIRE AGREEMENT**. This Agreement constitutes the entire terms and provisions of this Exclusive Right to Sell Listing Agreement between Seller and Listing Broker and may be used as a basis for presenting the Property to prospective Buyer. If this Agreement is signed by more than one person, it shall constitute the joint and several obligations of each. This Agreement contains the entire agreement of the parties and cannot be changed except by their written consent. If any part of this Agreement is deemed to be invalid or otherwise unenforceable or illegal, the balance of this Agreement will remain in full force and effect and will be construed in accordance with its terms as if the invalid or illegal provision were not contained herein. This Agreement shall survive execution and delivery of the Agreement of Sale and closing documents and shall not be merged therein. The singular forms "Seller" and "Buyer" are used in this Agreement solely as a convenience and is intended to include all parties who are Sellers and Buyers.

27. **ACKNOWLEDGMENT**. Seller acknowledges he/she has read, fully understands, and consents to this Exclusive Right to Sell Listing Agreement and acknowledges receipt of a copy. A facsimile, electronic record with electronic signature or photocopy of a signed Agreement shall constitute an original.

28. **SELLER AUTHORITY**. I/We hereby certify that I am/we are all the Seller(s) and am/are authorized to transfer the Property and hereby agree to the above terms, and that no other third-party consent is necessary or has been omitted to execute this Agreement or convey the Property and by signing below hereby agree to the above terms.

Seller _Seth Blum (DocuSigned)_ Date 10/25/2024

Seller _(DocuSigned)_ Date 10/25/2024

Seller _____ Date _____

Seller _____ Date _____

Acceptance by Broker (or Authorized Representative) _____ Date _____
This Agreement is binding once signed by all parties, including the Listing Broker or their Authorized Representative, even though the marketing or MLS entry of the property may not start until a later date.

LF1006                                                                                                                                  7/17/2024

©Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified July 17,2024.This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.