


# AGREEMENT OF SALE for DELAWARE RESIDENTIAL PROPERTY
*This is a legally binding agreement; if not understood, seek competent legal advice prior to signing.*

THIS FORM IS DESIGNED AND INTENDED FOR THE SALE AND PURCHASE OF RESIDENTIAL REAL ESTATE LOCATED IN THE STATE OF DELAWARE

## 1. PARTIES.
SELLER: Seth And Bessy Blum
Address: 3317 Woodvalley Dr, Pikesville MD 21208-195
BUYER: Robert Lowell Hix, 3rd and Jennifer Aimee Hix
Address: 8631 Andrew Ellicott Ct, Ellicot City, MD 21043

## 2. PROPERTY.
Buyer hereby agrees to purchase from Seller and Seller agrees to convey to Buyer that Property identified as TAX PARCEL # 53319.00941.00 being situated in Sussex County, Delaware and further identified as:
11486 W Sand Cove Rd, Selbyville, DE 19975

## 3. PAYMENT TERMS.
A. PURCHASE PRICE  $ ~~525,000~~ 550,000
To be paid as follows:
B. DEPOSIT UPON SIGNING THIS AGREEMENT  $
In the form of ☑Check ☐Cash ☐Other
C. DEPOSIT DUE WITHIN 5 DAYS OF ACCEPTANCE  $ 5,000
D. Additional DEPOSIT (if any) DUE WITHIN _____ DAYS OF ACCEPTANCE  $

*JH 07/02/25*
*RLH 07/02/25 9:01 PM EDT dotloop verified*

Any remaining balance will be paid at settlement. All sums deposited by Buyer prior to the time of final settlement shall be placed in a *non-interest bearing* escrow account with (Select Only One): ☑ Listing Brokerage Organization ("Listing Broker") OR ☐ Buyer's Brokerage Organization ("Buyer's Broker"). In the event no selection is made, the deposit will be held by the Listing Broker, unless otherwise specified in this Agreement. Escrow Holder shall promptly provide proof of receipt upon request. Any funds delivered by Buyer within fifteen (15) days of settlement shall be certified funds. *Funds paid by Buyer at settlement shall be in certified check, cashiers check, treasurer's check, wire transfer or a Delaware attorney's escrow check.* Seller's net proceeds shall be paid by check from the settling attorney's escrow account unless other arrangements are made with the attorney.

## 4. INCLUSIONS/EXCLUSIONS.
Unless specifically excluded by this Agreement the purchase price shall also include the following, as and if now installed, stored in, or located on the Property: all presently existing plumbing, heating, electrical and central air conditioning systems; and all other permanent or attached fixtures including but not limited to, all existing shutters, awnings, wall to wall carpeting, radiator covers, cabinets, shelves, mirrors fixed in place, attic/exhaust fans, lighting and plumbing fixtures, and landscaping. Certain other now existing items which may be considered personal property, whether installed or stored upon the Property are included, as follows: **(If neither column is checked, item shall be considered excluded. *Should the Sellers Disclosure of Real Property Condition Report differ from the below list of included items, the below list shall supersede*):**

| YES | NO | Item | YES | NO | Item | YES | NO | Item |
|---|---|---|---|---|---|---|---|---|
| ☑ | ☐ | Range with oven | ☐ | ☐ | Draperies/Curtains | ☑ | ☐ | Wall Mounted Flat Screen TV #2 |
| ☐ | ☐ | Range Hood-exhaust fan | ☐ | ☐ | Drapery/Curtain rods | ☑ | ☐ | Wall brackets for TV #2 |
| ☐ | ☐ | Cooktop-stand alone | ☑ | ☐ | Shades/Blinds | ☐ | ☐ | Surround sound system & controls |
| ☐ | ☐ | Wall Oven(s) # | ☐ | ☐ | Cornices/Valances | ☐ | ☐ | Attached Antenna/Rotor |
| ☑ | ☐ | Kitchen Refrigerator | ☐ | ☐ | Furnace Humidifier | ☐ | ☐ | Garage Opener(s) # code |
|   |   | with icemaker | ☑ | ☐ | Smoke Detectors |   |   | with remote(s) # |
| ☐ | ☐ | Refrigerator(s)-additional # | ☐ | ☐ | Carbon Monoxide Detectors | ☐ | ☐ | Electronic/Smart Door Locks |
| ☐ | ☐ | Freezer –free standing | ☐ | ☐ | Wood Stove | ☑ | ☐ | Smart Cameras/Doorbells |
| ☐ | ☐ | Ice Maker-free standing | ☐ | ☐ | Fireplace Equipment | ☐ | ☐ | Smart Thermostat |
| ☑ | ☐ | Dishwasher | ☐ | ☐ | Fireplace Screen/Doors | ☐ | ☐ | Pool Equipment |
| ☑ | ☐ | Disposal | ☐ | ☐ | Electronic Air Filter | ☐ | ☐ | Pool cover |
| ☑ | ☐ | Microwave | ☐ | ☐ | Window A/C Units # | ☐ | ☐ | Hot Tub, Equipment |
| ☑ | ☐ | Washer | ☑ | ☐ | Attic fan |   |   | with cover |
| ☑ | ☐ | Dryer | ☐ | ☐ | Whole house fan | ☐ | ☐ | Sheds/Outbuildings # |
| ☑ | ☐ | Trash Compactor | ☑ | ☐ | Bathroom Vents/Fans | ☐ | ☐ | Playground Equipment |
| ☐ | ☐ | Water Filter | ☐ | ☐ | Window Fan(s) # | ☐ | ☐ | Irrigation System |
| ☑ | ☐ | Water Heater | ☐ | ☐ | Ceiling Fan(s) # | ☐ | ☐ | Backup Generator |
| ☐ | ☐ | Sump Pump | ☐ | ☐ | Central Vacuum | ☐ | ☐ | Water Conditioner (owned) |
| ☐ | ☐ | Storm Windows/Doors |   |   | with attachments | ☐ | ☐ | Water Conditioner (leased) |
| ☐ | ☐ | Screens (if present) | ☐ | ☐ | Intercoms | ☐ | ☐ | Fuel Storage Tank(s) (owned) |
|   |   |   | ☐ | ☐ | Satellite Dish | ☐ | ☐ | Fuel Storage Tank(s) (leased) |
|   |   |   | ☐ | ☐ | with controls & Remote(s) | ☑ | ☐ | Security/Monitoring Systems (owned) |
|   |   |   |   |   |   | ☐ | ☐ | Security/Monitoring Systems (leased) |
|   |   |   |   |   |   | ☐ | ☐ | Solar Equipment (owned) |
|   |   |   |   |   |   | ☐ | ☐ | Solar Equipment (leased) |

Seller's Initials _SB_ _____    Buyer's Initials _RLH_ _JH_

©Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

ADDITIONAL INCLUSIONS (Not previously checked)
Specify): Fully furnished. See addendum

*GH 7/02/25*
*RLH 7/02/25 1 PM EDT op verified*

ADDITIONAL EXCLUSIONS (Not previously checked)
Specify): ~~Seller to provide a written list of inclusions/exclusions prior to ratification~~

Initial: ✓
Initial: SB

All property sold by this Agreement is called the "Property". No items shall be replaced or substituted without prior written approval of all parties.

5. **RENTAL/LEASE.**
(a) The Property ☐ is ☒ is not subject to any tenant rental/lease agreements. Seller will not alter any existing agreement nor enter into any new rental/lease agreement without Buyer's written consent and will assign all existing leases and transfer security deposits, and any other pre-paid items to Buyer at final settlement. Buyer agrees to cooperate with Seller's Rental Agency by signing the necessary documents **prior to completion of settlement** to facilitate the existing rentals after final settlement.

(b) The Property ☐ is ☒ is not subject to any third-party rental/lease agreement(s) such as fuel storage tank leases, solar panel leases, water conditioner leases, security monitoring system leases, or similar agreements as specified in Section 4 or elsewhere in this Agreement. Seller will not alter any existing agreement nor enter into any new rental/lease agreement without Buyer's written consent. Buyer and Seller agree to mutually cooperate with the transfer of any rental/lease agreements prior to final settlement.

6. ☒ Yes   ☐ No **FINANCING CONTINGENCY.** (only a part of this agreement if marked or checked yes)
(a) Buyer's obligation to purchase the Property shall be contingent on Buyer's ability to obtain mortgage financing pursuant to the terms set forth below. Each of the terms below as applicable shall be deemed essential to this financing contingency and Buyer shall not make application for any mortgage financing different from the terms set forth below that would be adverse to Seller's interest without Seller's express prior written consent. The Interest rate shall be at the prevailing rate. Should, after Buyer makes application consistent with the terms set forth below, and has diligently and in good faith pursued that application, any commitment for mortgage financing that may be issued deviate from one or more of such terms, and Buyer elects not to accept the financing thus offered, or the application is denied, Buyer may, at Buyer's sole election, void this Agreement, in which event all deposits will be returned to Buyer. If Buyer claims that the mortgage application resulted in a denial, Buyer shall provide Seller with a copy of the denial. The terms of mortgage financing are the following:

Type of financing: Conventional-Fixed      Loan Amount: 467,500
Term in years: 30                          Maximum loan to value ratio: 85

Final date for receipt of Buyer's mortgage commitment and the appraisal, if required by lender (the "Commitment Date"):
08/01/2025

(b) Buyer will make written application in a manner consistent with that provided for above within 3 days of the effective date of this Agreement and shall use their best efforts and diligently pursue such financing and promptly file any supplemental information, papers and/or other material that may be requested or required from time to time by the lender. If Buyer fails to make application as specified above, then Seller may declare Buyer in default of this Agreement by tendering written notice of that election to Buyer at any time prior to Buyer making application consistent with the terms set forth above. Should Seller elect to declare Buyer in default before such application is completed, Seller shall have available all the remedies set forth in this Agreement.

(c) Buyer shall provide Seller, or Seller's Designated Agent, with a copy of any mortgage commitment on or before the commitment date above. If a commitment consistent with the terms set forth above, or one that differs from those terms which is nonetheless acceptable to Buyer is obtained, and said commitment (1) imposes financial obligations upon the Seller which the Seller has not previously agreed to pay, and does not then agree to pay, and/or (2) is contingent upon the sale of any real or personal property owned by Buyer, then Seller may within five (5) days after receipt of a copy of the commitment, cancel this Agreement in writing, and all deposit money shall then be returned to Buyer in accordance with provisions of this Agreement. If such notice is not given, Seller shall be deemed to have accepted said condition(s).

(d) If a written mortgage commitment is not delivered to Seller by the Commitment Date, Seller shall from that time forward have the right to void this Agreement by tendering written notice of that election to Buyer or Buyer's Designated Agent provided, however, that if written mortgage commitment is delivered to Seller after the Commitment Date but prior to any such written notice of termination, then this Agreement shall remain in full force and effect, and Seller's right to void this Agreement for failure to meet the Commitment Date shall be deemed waived. If Seller elects to terminate as set forth in this paragraph, and Buyer is not then otherwise in default of the terms of this Agreement, all deposit money shall be returned to Buyer in accordance with the terms of this Agreement.

(e) No representation is made by the agents or parties as to whether or not the Property will qualify for the type of financing indicated.

(f) Buyer authorizes the mortgage lender and settlement attorney to share with the Seller and Designated Agent(s) the following documents in connection with their application for a mortgage loan: (a) any preapproval, (b) any pre-Loan Estimate of loan costs, (c) the Loan Estimate (and any revisions), (d) commitment agreement, and (e) Closing Disclosure (and any revisions). Buyer authorizes settlement attorney to share the Settlement Statement (if any) with the Seller and Designated Agent(s). If asked, Buyer shall provide the above-mentioned documents directly to the Designated Agent(s) and settlement attorney if the lender does not provide them. This authorization shall expire upon written denial of the loan application.

7. **SETTLEMENT.** Unless otherwise mutually agreed, final settlement shall be held in Sussex County, Delaware on 08/08/2025, or before if mutually agreed upon, at which time possession shall be given and Seller shall deliver all keys in Seller's possession or under Seller's control. It is expressly agreed if a longer time is necessary to secure a survey, or to prepare the necessary legal and financial settlement documents, the date of settlement shall be extended for a reasonable time to affect these conditions.

Seller's Initials [SB] [✓]   Buyer's Initials [RLH] [GH]

Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

Seller authorizes settlement attorney to share with the Buyer and Designated Agent(s) the following documents: (a) Closing Disclosure (and any revisions), and (b) Settlement Statement (if any). If asked, Seller shall provide these documents to the Buyer and Designated Agent(s) if the settlement attorney does not provide them.

The parties agree to attend settlement together in the same conference room unless arrangements are made before settlement with the settlement attorney.

The parties understand that the mortgage lender must provide Buyer with the Closing Disclosure at least three specific business days prior to Consummation (settlement). If the Closing Disclosure is mailed, it must be confirmed to have been mailed out a minimum of seven specific business days prior to Consummation (settlement). Specific business days are defined as all days except Sundays and federal holidays. Therefore, all parties understand the importance of providing information and dollar figures to the lender in a timely fashion. Agents are not responsible for delays in settlement caused by failure of the parties to provide information in a timely fashion.

**WIRE FRAUD ALERT.** Never trust wiring instructions sent by email. Criminals are hacking email accounts of real estate agents, Buyers, Sellers, settlement attorneys and others, resulting in fraudulent wire instructions being used to divert funds to the account of the criminal. The money is then gone. The emails often look legitimate, but they are not. Buyer and Seller are advised not to wire any funds without personally speaking with the intended recipient of the wire to confirm the routing number and the account number. Use only verified trusted contact information to double check that the wiring instructions are correct. Buyer and Seller should not send personal information such as social security numbers, bank account numbers and credit card numbers except through secured fax, encrypted email, a trusted carrier, or personal delivery to the intended recipient.

**8.     TIME IS OF THE ESSENCE.** Other than those limited conditions related to settlement as noted in Section 7 above, time is of the essence in this Agreement. Time is of the essence means that the dates and time frames agreed by the parties must be met. Failure to meet stated dates or time frames may result in waiver of contractual rights or default under the terms of this Agreement.

**9.     CONVEYANCE.** The Seller acknowledges that the Property is to be conveyed (check one):
☑ **IN FEE SIMPLE**
☐ **CO-OP OWNERSHIP**
☐ **LEASEHOLD SUBJECT TO AN ANNUAL GROUND RENT**, presently in the amount of $_____

**10.    DISBURSEMENT OF DEPOSITS.** The parties to this Agreement agree that deposit monies held on account by a licensed Delaware Real Estate Broker (hereinafter referred to as "Escrow broker") as specified herein shall only be disbursed under one of the following conditions:
  A.   Upon final settlement hereunder; OR
  B.   Upon a release being signed by all parties to the transaction authorizing disposition of these funds; OR
  C.   At such time as one of the parties to the transaction files suit and the court orders the disbursement of these funds; OR
  D.   Escrow Broker follows the notice and disbursement process based on passage of time outlined below; OR
  E.   Upon the filing of an interpleader action in the proper court, thereby causing these funds to be deposited with the court.

Escrow Broker's notice and disbursement process based on passage of time: Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (60 if not specified) after the Settlement Date as specified in this Agreement of Sale (or any written extension thereof) or following the termination of the Agreement, whichever is earlier, then the Escrow Broker holding the deposit monies may, in its sole discretion, but is not obligated to, decide to disburse the deposit monies to the person who, in the good faith of the Escrow Broker, is entitled to receive the deposit monies in accordance with the terms of this Agreement. Prior to making such disbursement, Escrow Broker shall notify all parties, in writing with verification of delivery or to an email address used during the transaction, of Escrow Broker's intention to make the disbursement unless within sixty (60) days of notice, Escrow Broker receives written notice that the dispute is the subject of filed litigation, arbitration, or mediation. If Escrow Broker has received written notice of filed litigation, arbitration, or mediation prior to disbursement, Escrow Broker will continue to hold the deposit monies until receipt of a written disbursement agreement between Buyer and Seller or a final court or binding arbitration order. Buyer and Seller agree that the disbursement of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after disbursement is made unless disbursement is according to court or binding arbitration order. Buyer and Seller agree that upon disbursement according to this process, neither Buyer nor Seller shall have any further right, claim, demand or action against Escrow Broker regarding the return or disposition of the deposit monies, and Buyer and Seller, jointly and severally, shall indemnify and hold Escrow Broker harmless from any and all such rights, claims, demands or actions.

Interpleader: Should Escrow Broker elect to file an action of interpleader, Buyer and Seller further agree and hereby expressly and irrevocably authorize Escrow Broker to deduct from the Deposit all costs incurred by Escrow Broker in the filing and maintenance of such action of interpleader including but not limited to filing fees, court costs, service of process fees and attorneys' fees, up to the full amount of the Deposit(s) held by Escrow Broker. All such fees and costs authorized herein to be deducted may be deducted by Escrow Broker from the Deposit prior to paying the balance of the Deposit to the court. Buyer and Seller further agree and expressly declare that all such fees and costs so deducted shall be the exclusive property of Escrow Broker. If the amount deducted by Broker is less than the total of all of the costs incurred by Broker in filing and maintaining the interpleader action, then Buyer and Seller jointly, and severally, agree to reimburse Escrow Broker for all such excess costs upon the conclusion of the interpleader action.

Deposits held by Non-broker: Buyer and Seller understand disbursement of deposits not held by a licensed Delaware Real Estate Broker are not necessarily done in compliance with the language set forth in this Section. In such instance, Buyer and Seller are advised to consult with legal counsel.

**11.    TRANSFER TAXES; PRO-RATIONS; HEATING FUEL.** Applicable transfer taxes and/or motor vehicle document fees shall be paid one-half by Buyer and one-half by Seller, except that, should either party be specifically exempted from any portion of any applicable authority's transfer tax, that exempted party shall receive the full exemption for which they are entitled, with such exemption having no effect on any remaining transfer taxes due. Should the transaction, as opposed to a party, be exempted from any applicable transfer tax, then both parties shall benefit equally from such exemption. Any fees assessed to a specific party shall be paid by that party and not prorated. Taxes, special assessments, ground rent, water, sewer, electric and other lienable charges imposed by the State of Delaware,

Seller's Initials [ SB ] [ ✓ ]  Buyer's Initials [ RBH ] [ GH ]

Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

any political subdivision thereof, any school district, neighborhood association and/or condominium common expenses shall be apportioned pro-rata at the time of final settlement, as shall the rents and pre-paid operating expenses if Property is sold subject to a lease. Buyer shall pay Seller at settlement current market price for any remaining heating fuel conveyed with Property. Buyer is advised that in some cases propane tanks located on residential properties are leased and ownership of the tank may not be transferred to Buyer as part of this agreement.

☑ **Seller** ☐ **Buyer** shall pay for deed preparation. Buyer shall pay all other customary settlement charges and lending costs including survey.

**12.    TITLE.** Title is to be good and marketable either fee simple absolute conveyed by Deed of Special Warranty or Lease-hold Estate conveyed by assignment of the existing lease, as applicable, insurable for both owners and lenders coverage at regular rates by a title insurer duly licensed to issue title insurance in the State of Delaware, clear of any liens and encumbrances, except restrictions of record and existing easements generally applicable to properties in the immediate neighborhood or the subdivision in which the Property is located. Title shall also be delivered without encroachments or violations of restrictions, zoning or subdivision regulations unless disclosed by Seller on the Seller's Disclosure of Real Property Condition Report. If title objections are raised, Seller shall have thirty (30) days from the date Seller is notified to cure the same, and the settlement date shall be extended accordingly. If objections are not satisfied by the extended settlement date, this Agreement shall terminate and all deposit monies shall be refunded to Buyer and all reasonable legal, loan, survey, and inspection fees incurred by Buyer will be paid by Seller, unless Buyer elects to waive the unsatisfied objections and complete the purchase. Seller may use the purchase price payable to Seller at settlement to discharge liens and encumbrances of record in fixed and ascertainable amounts.

**13.    NOTICE/DELIVERY OF DOCUMENTS.** In this Section, the word "Agreement" includes offers, counteroffers, addenda or any other notice or agreement between the parties. All agreements shall be in writing. Verbal, electronic or written communication between the parties or the parties' Designated Agent(s) that this Agreement has been signed and ratified shall be binding on all parties and such notice shall constitute delivery. Written communication shall be effective when sent. A facsimile, electronic record with electronic signature or photocopy of a signed Agreement shall constitute an original. Buyer or Seller, if there be more than one, expressly agree that notice to one shall be notice to all.

**14.    NO RECORDING.** This Agreement shall not be recorded or filed in any place of public record. If Buyer does record this Agreement, or permit this Agreement to be recorded, Seller may elect to treat such act as a default and have all the remedies provided herein.

**15.    FAIR HOUSING.** All Parties agree to comply with all Fair Housing and Civil Rights laws in the purchase and sale of the Property and further agree specifically not to discriminate against any person because of RACE, COLOR, NATIONAL ORIGIN, RELIGION, CREED, SEX, MARITAL STATUS, FAMILIAL STATUS, AGE, SEXUAL ORIENTATION, GENDER IDENTITY, SOURCE OF INCOME and/or HANDICAP/DISABILITY, or any other protected classes, as may from time to time be added or amended by law.

**16.    FIRPTA AND DELAWARE TAX PAYMENT.** Section 1445 of the United States Internal Revenue Code of 1986 provides that a Buyer of residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if: (a) the purchase price exceeds three hundred thousand dollars ($300,000.00); and (b) the Seller is a foreign person. Unless otherwise stated in an addendum attached hereto, if the purchase price is in excess of three hundred thousand dollars ($300,000.00), Seller represents that Seller is not a nonresident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those are defined by the Internal Revenue Code and applicable regulations) and agrees to execute an affidavit to this effect at time of settlement. By Delaware law, money may be withheld from a Seller who will not be a resident of Delaware after Settlement, unless exempt. Delaware Real Estate Tax Return, Declaration of Estimated Income Tax (formerly form 5403) is used to calculate the amount of tax required to be withheld from Seller at settlement.

**17.    HOMEOWNERS WARRANTY.** Buyer and Seller are advised that Homeowners Warranties are available. A Homeowners Warranty is only part of this Agreement if Buyer or Seller agrees to purchase a warranty. Buyer and Seller are advised to request information about what is included in the warranty and what is excluded (for example, preexisting conditions) and the amount of the deductible.

**18.    RISK OF LOSS.** The risk of loss or damage to the Property by fire, wind storm or other casualty until settlement shall be borne by Seller. If any part of the property is damaged or destroyed by fire or other casualty loss, Seller shall restore the same to its previous condition as soon as reasonably possible, but in any event by settlement date. If Seller is unable to do so, Buyer may terminate this Agreement and the deposit monies shall be refunded to Buyer in accordance with the terms of this Agreement.

**19.    CONDITION OF PROPERTY; INSPECTIONS.** Seller shall deliver the Property in substantially the same physical condition as of the date of this Agreement unless repairs are agreed to as part of the inspection processes explained in Sections 20, 21 and 22. However, the electrical, plumbing, heating, air conditioning, and any other electro-mechanical systems, appliances and equipment included in this Agreement shall be in operating condition at time of final settlement unless otherwise disclosed in the Seller's Disclosure of Real Property Condition Report Form or elsewhere in this Agreement of Sale. Seller's responsibility for these items shall expire at the time of settlement.

Seller shall not be obligated to repair any defects fully disclosed in the Seller's Disclosure of Real Property Condition Report or defects otherwise accepted by Buyer in this Agreement or as a result of the inspections. However, specific actions required by this Agreement or agreed to by addendum resulting from the inspections, such as "repair defective electric outlet in the kitchen," will remain part of this Agreement.

Any failures of the Property occurring between the time of final acceptance and settlement shall be repaired by Seller, at Seller's expense, prior to settlement. Seller is responsible for ensuring that utilities are turned on during inspections, appraisals and pre-settlement inspection. Seller agrees to permit access to Property by any authorized appraiser, inspector or contractor as required by the lender or

Seller's Initials [SB] [✓]    Buyer's Initials [RBH] [JH]

Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

by other terms of this Agreement. Property shall be "broom clean" and free of debris at time of final settlement or occupancy (whichever occurs first).

Buyer shall have the responsibility of scheduling a pre-settlement inspection of Property within 48 hours prior to settlement to verify that the Property is in the condition required by this Agreement including conditions disclosed and accepted by Buyer elsewhere in this Agreement or by addendum.

Except as expressly contained herein, no other warranties or representations have been made by Seller or relied upon by the Buyer, and upon settlement all the Seller's obligations for condition of the Property under this Agreement shall expire. It is understood and agreed by the parties hereto the Broker(s) and Designated Agent(s) assumes no responsibility for defects concerning the physical condition of the Property described herein and all improvements thereon. Buyer represents that they have made a satisfactory inspection of the Property and agrees to accept the Property in its present condition except as otherwise provided in this Agreement.

**20.** ☑ Yes ☐ No   **WOOD DESTROYING INSECT INSPECTION REPORT.** (only a part of this agreement if marked or checked yes)
Buyer shall procure, at Buyer's expense, a wood destroying insect inspection report (WDI) from a company holding a Pesticide Business License or an individual licensed by the Department of Agriculture as a Commercial Pesticide Applicator (Restricted Use) Category 7B Wood Destroying Pest Control (WDI Inspector).

The inspection shall include the house, attached or detached garage, and improvements attached to the house or garage, but not other detached items on the Property, such as (but not limited to) sheds, fences, wood piles, mulch beds, etc., unless such items are specifically listed herein.

The Buyer shall deliver to Seller a copy of the WDI report no later than 07/11/2025 _____ (or within fifteen (15) days of ratification/effective date of this Agreement if no date specified). If Buyer does not choose to obtain an Inspection, or if the report is not delivered to the Seller by date specified, then Buyer has waived this contingency.

(a) If there is no active infestation, prior infestation, prior treatment or damage from infestation, then no further action is needed by either party.

(b) If the report indicates that there is any active infestation, prior infestation, prior treatment or damage from infestation, then Buyer may, at the Buyer's expense, obtain an inspection to determine if the structural integrity of the property has been impaired and provide an estimate for treatment and repairs. Any additional inspections necessitated by the initial report will be delivered to the Seller no later than the date specified above. If the first structural report states that the structural integrity has not been impaired, no structural repairs by the Seller shall be required.

(c) If the cost to treat and repair damage exceeds 10% of the Purchase Price, Buyer may declare this Agreement null and void, in which case the deposit shall be returned to Buyer in accordance with provisions in this Agreement, and each party shall be relieved of further liability to the other.

(d) If (c) does not apply, then Seller shall have the option of treating the infestation and having any structural impairments (if applicable) corrected by licensed contractors, at Seller's expense prior to settlement. Seller shall, within seven (7) days, notify Buyer in writing whether or not Seller will exercise its option to do any required work. After the treatment/repairs have been completed, Seller shall provide Buyer with a written statement from the licensed contractor certifying that the repairs required by the first structural report have been completed and the integrity of those areas is no longer structurally impaired. This report shall be provided no later than three (3) days prior to settlement. Buyer may, at Buyer's expense, hire a representative to be at the Property while the Seller's contractor makes repairs. If the Seller refuses to treat the infestation or have any structural impairment corrected by licensed contractors at Seller's expense prior to settlement, fails to respond in writing to Buyer concerning the infestation or any structural impairments, or an agreement about such infestation or repairs is not negotiated within seven (7) days from delivery of the WDI report to the Seller, then Buyer may notify Seller in writing, no later than two (2) days after the aforementioned seven (7) day period of Buyer's intent to purchase the Property in its present condition, otherwise this Agreement shall be null and void and all deposit money shall be returned to Buyer in accordance with the terms of this Agreement provided Buyer is not otherwise in default. If this Agreement is cancelled as a result of this contingency, all parties agree to immediately execute the proper documentation to acknowledge termination of this Agreement. There shall then be no further obligation or liability of either party, Broker(s) or Designated Agents(s) and all deposit money shall be returned to Buyer in accordance with the terms of this Agreement.

(e) Should Buyer notify the Seller of their intent to purchase the Property in its present condition, there shall be no liability of Seller for the infestation or damage, no obligation of Seller to correct, no reduction of the purchase price, and no credit to Buyer at settlement for the cost of correction or re-inspection. In such event, Buyer waives all claims under this section against the Seller, the Broker(s) and its Designated Agent(s) for any damage to the structure by wood destroying insects.

**21.** ☑ Yes ☐ No   **HOME INSPECTION CONTINGENCY.** (Only a part of this agreement if marked or checked yes)
Written report of major defects and Buyer's written request(s) for repairs, if any, due to Seller by 07/11/2025 _____ (or within fifteen (15) days of ratification/effective date of this Agreement if no date specified).

Written response from Seller due to Buyer by 07/14/2025 _____ (or within seven (7) days of Seller's receipt of Buyer's written request if no date specified).

The inspection shall be limited to the house; attached or detached garage(s); improvements attached to the house or garage(s); and the electrical, plumbing, heating, air conditioning; and any other electro-mechanical systems, appliances and equipment included in this sale, together with _____ (other systems or items to be inspected by the home inspection company).

No other inspections are authorized or shall be performed unless authorized elsewhere in the Agreement, or unless specifically recommended for further inspection in the Home Inspection Report.

If Buyer is not purchasing a newly constructed home, the Property may have minor problems associated with a previously owned property. Unless otherwise noted in Section 33, Buyer assumes the risk of the condition of items that cannot be adequately inspected due to

Seller's Initials [ SB ] [ ✓ ]   Buyer's Initials [ RBH ] [ JH ]

©Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

weather or other conditions not under Seller's control. A major defect is any deficiency or condition that causes an item to perform in an unsafe manner or that prevents the item from performing its intended function. Buyer agrees that minor repairs and routine maintenance do not constitute defects and are not part of this contingency. The fact that a functioning major component may be at the end of its useful life shall not render such component defective for purposes of this Section.

Neither Buyer, nor Buyer's Inspectors, shall in any way excavate, penetrate or otherwise damage any part of the property without the prior written consent of Seller, nor shall any furnishings, or personal property belongings to Seller be moved or relocated unless absolutely necessary in connection with the inspection.

If "Yes" is indicated above, this Agreement is contingent upon Buyer obtaining a home inspection of the Property and written report, by a home inspection company and/or particular component(s) by a licensed contractor/professional of Buyer's choice at Buyer's expense (the Inspection). If Buyer does not choose to obtain an Inspection, or if major defects are not reported to the Seller by date specified, then Buyer has waived the Home Inspection contingency.

If the Inspection or any subsequent inspection(s) recommended in the Inspection report discovers major defects, Buyer shall provide Seller with a written request for repairs and a copy of the relevant portions of the Inspection report(s) no later than the deadline specified above. All inspections shall be at the direction and expense of Buyer, (unless requested by Seller for negotiations which shall then be at the direction and expense of Seller) and performed by a licensed contractor/professional. The Broker(s) or Designated Agent(s) shall not be responsible for determining the necessity of additional inspections.

Buyer and Seller agree that Broker(s) or Designated Agent(s) does not guarantee, and will not be held responsible for, any person or company performing the inspection or correction of any condition pursuant to the terms of this Agreement and shall not be responsible for the selection of any person or company chosen to perform an inspection or correct any condition.

Seller shall then, respond in writing to:

(a) Agree to correct any major defects at Seller's sole cost and, if necessary, by a licensed contractor/professional. All required permits must be secured by Seller. Written proof of completion shall be supplied to Buyer at least two (2) days prior to settlement; OR

(b) Refuse to correct the major defects; OR

(c) Offer to enter into a mutually agreeable written agreement with Buyer providing for particular repairs to the Property and/or credit to Buyer at Settlement if this is acceptable to the mortgage lender. The results of successful negotiations shall be memorialized by written agreement signed by the parties.

If the Seller agrees to correct major defects, once the Seller has completed the repairs and supplied written proof of completion to the Buyer, the Buyer, at Buyers expense, is permitted to have such defects reinspected by the same home inspector or licensed contractor/professional who completed the initial inspection for the limited purpose of verifying that such repair was complete.

If the Seller refuses to correct the major defects, fails to respond in writing to Buyer's request concerning major defects as identified in the inspection report(s), or an agreement about such repairs is not negotiated, then Buyer may notify Seller in writing, no later than two (2) days after the deadline for the Seller's response as specified above, of Buyer's intent to purchase the Property in its present condition, otherwise this Agreement shall be null and void. If this Agreement is cancelled as a result of this contingency, all parties agree to immediately execute the proper documentation to acknowledge termination of this Agreement of Sale. There shall then be no further obligation or liability of either party, Broker(s) or Designated Agents(s) and all deposit money shall be returned to Buyer in accordance with the terms of this Agreement provided Buyer is not otherwise in default.

Should Buyer notify the Seller of their intent to purchase the Property in its present condition, there shall be no liability of Seller for the defects, no obligation of Seller to correct, no reduction of the purchase price, and no credit to Buyer at settlement for the cost of correction or re-inspection. In such event, Buyer waives all claims under this Section against the Seller, the Broker(s) and its Designated Agent(s) for any defects shown in the home inspection report.

It is understood that general statements as to the condition of the Property contained in this Agreement, such as "electrical system shall be in working order at the time of settlement," will not obligate Seller to repair items noted in the Home Inspection Report unless Seller agrees to make repairs according to the terms of the Home Inspection Contingency.

Seller will have all items and systems covered by this Inspection operative at the time of inspection (including fuels). Seller shall not be obligated to repair any defects fully disclosed in the Seller's Disclosure of Real Property Condition Report or defects otherwise accepted by Buyer in this Agreement. However, specific actions required by this Agreement, such as "repair defective electric outlet in the kitchen," will remain part of this Agreement.

**22.  OTHER INSPECTIONS.** The purpose of these inspections is to independently evaluate the condition of the items and identify major defects, if any. A major defect is any deficiency or condition in an item that causes the item to perform in an unsafe manner or that prevents the item from performing its intended function. Buyer agrees that minor repairs and routine maintenance do not constitute defects and are not part of this contingency. The fact that a functioning major component may be at the end of its useful life shall not render such component defective for purposes of this Section. If Buyer does not choose to obtain an Inspection, or if major defects are not reported to the Seller by the date specified, then Buyer has waived the contingency. Each included contingency is subject to the terms and remedies described herein.

### a. ON-SITE WASTEWATER/SEPTIC SYSTEM.

For all properties utilizing an on-site wastewater/septic system that are sold or otherwise transferred to other ownership, the Seller shall have the system pumped out and inspected by a Class F and Class H licensee, respectively, prior to completion of the sale. If an inspection has occurred within the previous thirty-six (36) months and the Seller can provide proof of the pump out and inspection and the system is not a cesspool or seepage pit, then the inspections will suffice. It will be the Seller's sole cost and responsibility to provide the Buyer with the report (Class F and Class H) indicating that the system is in working order with no major defects by _____ (or within twenty-one (21) days of ratification/effective date of this Agreement if no date specified) If the Seller of an individual on-site wastewater/septic system provides proof of a licensed operator or has a service contract with a certified service provider then the Seller shall provide evidence of same to Buyer no later than the date specified

Seller's Initials [SD] [✓]   Buyer's Initials [RLH] [JH]

Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

herein and these requirements shall have been met. In the event the system fails the inspection, and a replacement system is required, Seller reserves the right to install a new system in conformance with DNREC rules and regulations subject to Buyer approval. Buyer has the option within five (5) days of written notification of the type and location of proposed replacement system to accept or declare this Agreement null and void. Lack of response from Buyer shall constitute acceptance of this Agreement.

**b.** ☐ Yes ☒ No **On-Site Wastewater/Septic Contingency (Buyer's Option).** (Only a part of this Agreement if marked or checked yes)
Notwithstanding the provisions of 22a herein, the Buyer may elect to have their own on-site wastewater/septic system inspection by a Class H system inspector (see list at www.dnrec.delaware.gov) of Buyer's choice and at Buyer's expense, to verify that the on-site wastewater/septic system is in working order with no major defects. This shall be in addition to 22a herein and shall not relieve the Seller from the provisions of 22a. In such event Buyer must provide Seller with a copy of the written report describing any major defect by _____ (or within thirty (30) days of ratification/effective date of this Agreement if no date specified).

**NOTICE TO BUYER:** In the event regulations allow this transaction to qualify for an inspection to be delayed until after settlement, and no inspection is completed prior to settlement, Buyer is hereby notified that the system must be inspected within ninety (90) days after settlement in conformity with DNREC regulations. Buyer accepts any responsibility for any upgrades or replacement at that time.

**c.** ☐ Yes ☒ No **Well Water Contingency.** (Only a part of this Agreement if marked or checked yes)
Buyer may have the water inspected by a water testing company of Buyer's choice, at Buyer's expense, to verify that the well is in working order with no major defects, and there is an absence of total coliform bacteria, and meets EPA standards for nitrate, chloride, and lead. Buyer must provide Seller with a copy of the written report describing any major defect.
Report of major defects, if any, due to Seller by _____ (or within fifteen (15) days of ratification/effective date of this Agreement if no date specified).

**d.** ☒ Yes ☐ No **Radon Contingency.** (Only a part of this Agreement if marked or checked yes)
Buyer may have Property inspected by a registered radon service company of Buyer's choice, at Buyer's expense, to verify that the average radon level is less than four (4) picocuries/liter. Buyer must provide Seller with a copy of the written report containing any evidence of higher radon levels than herein stated.
Report of major defects, if any, due to Seller by **07/11/2025** (or within fifteen (15) days of ratification/effective date of this Agreement if no date specified).

**e.** ☐ Yes ☒ No **Swimming Pool Contingency.** (Only a part of this Agreement if marked or checked yes)
Buyer may have the swimming pool inspected by a pool maintenance company of Buyer's choice, at Buyer's expense, to verify that the pool & equipment are in working order with no major defects. Buyer must provide Seller with a copy of the written report describing any major defect.
Report of major defects, if any, due to Seller by _____ (or within fifteen (15) days of ratification/effective date of this Agreement if no date specified).

**SELLER'S DUTIES.** In the event Seller provides Buyer or Buyer provides Seller timely written notice of a major defect of any of the above required or selected items no later than the specified deadline, the Seller shall notify Buyer within seven (7) days of said notice whether Seller: (a) intends to correct the major defect(s) at Seller's sole cost prior to settlement, (b) refuses to correct any of the major defects, or (c) offers to negotiate with Buyer about the major defects. If Seller fails to provide written notification, then this shall mean that Seller has refused to correct the major defect.

**BUYER'S DUTIES.** If the Seller refuses to correct the major defects, fails to respond in writing to Buyer's request(s) concerning major defects as identified in the inspection report(s), or an agreement about such repairs is not negotiated, then Buyer may notify Seller in writing, no later than two (2) days after the deadline for the Seller's response, of Buyer's intent to purchase the Property in its present condition, otherwise this Agreement shall be null and void.

Should Buyer notify the Seller of their intent to purchase the Property in its present condition, there shall be no liability of Seller for the defects, no obligation of Seller to correct, no reduction of the purchase price, and no credit to Buyer at settlement for the cost of correction or re-inspection. In such event, Buyer waives all claims under this Section against the Seller, the Broker(s) and its Designated Agent(s) for any defects shown in the inspection report.

If this Agreement is cancelled as a result of the election of any of the options within this Section, all parties agree to immediately execute the proper documentation to acknowledge termination of this Agreement of Sale. There shall then be no further obligation or liability of either party, Broker(s) or the Designated Agents(s) and all deposit money shall be returned to Buyer in accordance with the terms of this Agreement provided Buyer is not otherwise in default. Buyer and Seller agree that Broker(s)/Agent(s) does not guarantee, and will not be held responsible for, any person or company performing the inspection or correction of any condition pursuant to the terms of this Agreement and will not be responsible for the selection of any person or company chosen to perform an inspection or correct any condition. Unless otherwise noted in Section 33, Buyer assumes the risk of the condition of items that cannot be adequately inspected due to weather or other conditions not under Seller's control.

**23. ENVIRONMENTAL CONDITIONS.** Buyer is hereby advised that environmental conditions may exist about which Seller has no knowledge including but not limited to: buried fuel tanks, asbestos, radon, lead paint, mold, and urea-formaldehyde foam insulation. Buyer may negotiate with Seller for permission to conduct environmental testing as a term or condition of this Agreement. Any agreement relating to environmental testing must be in writing and signed by both Buyer and Seller. Further information can be obtained from the following agencies: United States Environmental Protection Agency, Washington, D.C.; Radon Health Systems Protection, Dover, DE; State of Delaware Department of Health and Social Services, Dover, DE; United States Consumer Products, Safety Commission, Washington, D.C.

**24. BUYER'S DEFAULT.** If Buyer fails to deliver any payment or additional deposit; fails to make mortgage application as specified herein; knowingly furnishes false or incomplete information to Seller, Broker, Designated Agent(s) or the lending institution concerning Buyer's legal or financial status; fails to cooperate in the processing of the mortgage loan application, resulting in failure to obtain a

Seller's Initials [SB] [✓]  Buyer's Initials [RBH] [JH]

Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

mortgage financing commitment; or violates or fails to perform any of the terms or conditions of this Agreement, and Seller shall not also be in default; then Seller shall have the right and option to cancel this Agreement and to retain any deposit money as liquidated damages for such default by Buyer, or exercise any legal or equitable right or remedy to which Seller may be entitled and in connection therewith to apply any deposit money either on account of the purchase price or on account of damages, as Seller may elect.

**25.   SELLER'S DEFAULT.** If Seller shall, for some reason not excused herein, fail or refuse to perform Seller's obligation to Buyer, and Buyer shall not also be in default, Buyer shall either have all monies paid herein on account of the Purchase Price (together with such reasonable costs incurred in preparation for settlement) refunded forthwith, whereupon all rights and obligations herein shall cease and terminate, or Buyer shall have the right to seek any remedy and maintain any action against Seller to which Buyer may be entitled whether at law or in equity.

**26.   NO REPRESENTATION.** Buyer and Seller understand and acknowledge that Broker(s) or Designated Agent(s) is not at any time authorized to make any representations about this Agreement or the Property other than those written in this Agreement. Broker(s), Designated Agent(s), Subagent(s) and employees of Broker(s) do not assume any responsibility for the condition of the Property or for the performance of this Agreement by any or all parties hereto. By signing this Agreement, Buyer and Seller acknowledge they have not relied on any representations made by Broker(s) or any Agent(s), Subagent(s) or employees of Broker(s), except those representations written in this Agreement.

**27.   INDEMNIFICATION/ATTORNEY FEES.** In the event any dispute arises under this Agreement between Seller and Buyer resulting in Broker(s) or Designated Agent(s), or Subagent(s) or employees of Broker(s) being a party to any litigation, Seller or Buyer, whichever is unsuccessful, shall indemnify and hold Broker(s), Designated Agent(s), Subagent(s) or employees of Broker(s) harmless from any liability, loss, damage, cost, expense, and attorney fees, provided such litigation does not result in a judgment against Broker(s), Designated Agent(s), Subagent(s) or employees of Broker(s) for acting improperly under this Agreement.

Should Buyer waive any inspections or provisions in this Agreement, either as the result of marking the item NO, failing to mark the item YES, or not following through with an inspection, Buyer shall hold Broker(s), Designated Agent(s), Subagent(s) or employees of Broker(s) harmless from any liability, loss, damage, cost, expense, and attorney fees resulting from Buyer's waiver of such provision. In the event a dispute arises under this Agreement between Seller and Buyer resulting in any litigation, and/or arbitration, Buyer or Seller, whichever is unsuccessful, shall also be liable for the other parties' court costs and attorney fees.

**28.   AGENCY DISCLOSURE.** As disclosed in the Consumer Information Statement of the Delaware Real Estate Commission, the parties confirm that the following agency relationships exist:

I.    Northrop Realty, Listing Broker
      ☑ Seller's Agent    ☐ Dual Agent

II.   Adam Ask, Designated Listing Agent
      ☑ Seller's Designated Agent    ☐ Designated Dual Agent

III.  Coldwell Banker Realty, Buyer Broker
      ☑ Buyer's Agent    ☐ Dual Agent    ☐ Seller's Subagent

IV.   Tatiana Koushnir, Designated Buyer Agent
      ☑ Buyer's Designated Agent    ☐ Designated Dual Agent    ☐ Seller's Subagent

V.    ☐ Buyer is unrepresented    ☐ Seller is unrepresented

**29.   BROKER COMPENSATION.** Buyer and Seller agree that the Broker(s) or Designated Agent(s) was responsible for procuring this Agreement and agree that Compensation for services rendered as specified in a separate agreement will be paid. The Listing Broker Compensation will be paid as specified in a separate Listing Agreement. The Buyer Broker Compensation will be paid as specified in a separate Buyer Agency (Representation) Agreement.

Seller agrees to credit ___**2.5%**___ (% of the gross selling amount OR flat fee) towards the Buyer Broker's Compensation on behalf of the Buyer at settlement. Buyer remains obligated to compensate Buyer Broker any difference between the aforestated amount and the amount specified in a separate Buyer Agency (Representation) Agreement. The amount of Compensation agreed to in this section supersedes any Compensation amount offered by Seller prior to the ratification of this Agreement.

If not previously paid, the settlement attorney is hereby irrevocably authorized and directed to collect Broker(s) Compensation as specified in the separate agreement and pay the same to the Broker(s) at final settlement as a convenience to the parties, and not as a limitation upon Buyer's or Seller's liability to pay the Compensation.

**30.   SELLERS CONCESSIONS.** Seller agrees to credit _____ (% of the gross selling amount OR flat fee) towards Buyer's closing costs at settlement, including, but not limited to any prepaid items, appraisals, inspections, surveys, mortgage fees, transfer taxes, or other fees or charges. It is the Buyer's responsibility to confirm with lender that the entire credit provided for herein may be utilized. If lender prohibits Seller from payment of any portion of such credit, then said credit shall be reduced to the maximum amount allowed by lender.

**31.   SUCCESSION.** This Agreement shall benefit and bind the parties hereto, their respective heirs, personal representatives, successors and assigns. Buyer may not assign Buyer's interest in this Agreement without Seller's prior written consent, or unless specified in Section 1 of this Agreement.

**32.   ADDENDUMS.** These Addendums are only applicable if marked **YES** or checked. **NO** or a blank means you are waiving the opportunity to include the contingency or clause. If language in this Agreement and Addendum(s) are in conflict, unless otherwise provided herein, then the addendum(s) will supersede this Agreement.

Seller's Initials [SB] [✓]    Buyer's Initials [RLH] [JH]

©Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

| | | |
|---|---|---|
| ☑ | Seller's Disclosure of Real Property Condition Report, unless exempt by State Law (additional form required) | |
| ☐ | Lead Based Paint Disclosure Form, unless exempt by Federal Law (additional form required) | |
| ☑ | Radon Disclosure Form, unless exempt by State Law (additional form required) | |
| ☑ | DUCIOA Resale Certification Form (if applicable) OR ☐ Contingency Addendum (check which applies) | |
| ☐ | Tax Deferred (1031) Exchange | |
| ☐ | Buyer's Financial Information ☐ Mortgage Letter with Credit Check | |
| ☐ | FHA Amendatory Language and *For Your Protection: Get a Home Inspection* (additional form required) | |
| ☐ | VA Amendatory Language | |
| ☐ | Homeowners Warranty paid for by _____ Warranty Company | Initial: SB  Initial: ✓ |
| ☑ | Additional Addenda not included above: Furnishings inclusion Addendum | |

*JH 07/02/25*
*RLH 07/02/25 1 PM EDT*
*dotloop verified*

**3. ADDITIONAL TERMS AND CONDITIONS.**

_____
_____
_____
_____

**34. MISCELLANEOUS.** Delaware law governs this Agreement. The Section captions are for convenient reference only and are not intended to limit or enlarge the substance of this Agreement. The term Broker(s) when used in this Agreement shall include Broker of Record, Brokerage Organization, Broker Owner, Designated Agent(s) and employees involved in this Agreement. The word "Contract" is synonymous with "Agreement" when used herein.

The singular forms "Buyer" and "Seller" are used in this Agreement solely as a convenience and are intended to include all parties who are Buyers or Sellers. Buyer and Seller agree that they have read and fully understand this Agreement, including the Seller's Disclosure of Real Property Condition Report (if applicable), that it contains the entire agreement between them and that they do not rely on any other written or oral representation or statement not expressly written in this Agreement, including any statement of fact or opinion contained in any advertisement, listing agreement, multiple listing description or multiple listing information sheet or made by Seller, any broker, salesperson, or any agent or employee of any of them. If settlement does not take place, Buyer and Seller shall each be responsible to pay for services ordered on their behalf, unless otherwise provided for herein. The parties hereto agree to execute and deliver any other instrument(s) or document(s) that may be necessary or convenient to carry into effect the provisions of this Agreement, and the parties agree to otherwise cooperate in good faith as may be necessary to complete the settlement contemplated herein. All days referenced herein are calendar days with the first day beginning on the day after the event. A day ends at midnight Delaware time. For example, if a notification is delivered on June 3 at 11:00 a.m., then the first day is June 4 ending at midnight Delaware time.

**35. CHANGES.** There have been changes in the form of this Agreement as copyrighted by the Delaware Association of REALTORS® other than filling in the blanks. ☐ Yes ☑ No. If yes, describe changes.

**36. ENTIRE AGREEMENT.** This Agreement and any addenda hereto contain the final and entire Agreement between the parties and may not be modified or changed except by written agreement signed by all parties. The parties agree that neither they nor their Broker(s)/Agent(s) shall be bound by any terms, conditions, statements, warranties nor representations, oral or written, not contained herein. FAILURE TO MARK OR CHECK \ A BOX "YES" MEANS BUYER HAS WAIVED THE RIGHT TO INCLUDE THAT CONTINGENCY OR CLAUSE AS PART OF THIS AGREEMENT.

**37. FINAL ACCEPTANCE.** This Agreement is not binding until signed by all parties and delivered to them or their Designated Agent(s).

**IN WITNESS WHEREOF**, the parties have signed this Agreement on the date stated below, thereby showing their intent to be bound hereby.

| Signature | Date & Time |
|---|---|
| *Robert Lowell Hix, 3rd* — BUYER | dotloop verified 06/30/25 5:12 PM EDT 4OZS-DILF-XDDV-SHTJ |
| *Jennifer Aimee Hix* DocuSigned by: — BUYER | dotloop verified 06/30/25 4:32 PM EDT 16OO-UFFJ-DRVU-QU5U |
| Signed by: — SELLER FA996D64ED... | 7/2/2025 |
| *Seth Blum* — SELLER 6R55CA92F422... | 7/2/2025 |

**EFFECTIVE/RATIFICATION DATE OF AGREEMENT** 7/3/2025

Seller's Initials [SB] [✓]   Buyer's Initials [RLH] [JH]

Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

| SELLER HEREBY REJECTS this offer as of | DATE & TIME |
|---|---|
| SELLER | SELLER |

All contact information below is included for informational purposes only and should not be construed as part of this contract.

| Northrop Realty | | Coldwell Banker Realty | |
|---|---|---|---|
| NAME OF LISTING (SELLER'S) BROKERAGE | CODE | NAME OF SELLING (BUYER'S) BROKERAGE | CODE |
| 209 5th St, Bethany Beach, DE 19930-9265 | | 89 Atlantic Ave, Atlantic Ave, 89 Atlantic Ave, Ocean View, DE 19970 | |
| ADDRESS | | ADDRESS | |
| DELAWARE LICENSE ID (BROKERAGE) | | DELAWARE LICENSE ID (BROKERAGE) | |
| Adam Ask | 3352180 | Tatiana Koushnir | 850641 |
| LISTING AGENT | CODE | SELLING AGENT | CODE |
| RS-0038921 | | RS-0025111 | |
| DELAWARE LICENSE ID (LISTING AGENT) | | DELAWARE LICENSE ID (SELLING AGENT) | |
| adamask@northroprealty.com | | tatiana.koushnir@cbmove.com | |
| EMAIL | | EMAIL | |
| (302) 540-1838 | | 302-539-1777 | |
| PHONE NUMBER | | PHONE NUMBER | |

Deposit received: $_____ : ☐ Cash ☐ Check # _____

Seller's Initials [Initial] [Initial] Buyer's Initials [RLH] [JH]

Copyright 2009-2024 by Delaware Association of REALTORS®. All Rights Reserved. Revised July 17, 2024. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.