UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE: | * |
| SETH AND BESSY BLUM | * CASE NO: 25-10005 |
| DEBTOR | |
| | * CHAPTER 11 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CREDITOR PETER ELMO'S
OBJECTIONS TO CONFIRMATION OF DEBTORS' PROPOSED CHAPTER 11 PLAN
DATED JULY 14, 2025

Now comes Creditor Peter Elmo, by his attorney Richard J. Hackerman, and files the following objections to the confirmation of the Debtors' proposed Chapter 11 Plan.

BACKGROUND

Bankruptcy is for the honest but unfortunate Debtor. Debtors do not meet that criteria.

Peter Elmo's claim results from the Debtors' financial exploitation of Mr. Elmo. Mr. Elmo is an 81-year-old widower. Debtor Bessy Blum, at the time a bank teller with access to Mr. Elmo's accounts, befriended Mr. Elmo after his wife of 50 years passed away. Then, after gaining his trust, Debtors schemed Mr. Elmo into loaning them more than half a million dollars so they could purchase a vacation home in Delaware. Debtors' together, betrayed Mr. Elmo's trust and kindness and never intended to repay him.

While the Debtors' income is substantial, Debtors use a significant portion of their income for Uber rides yet Debtors' have motor vehicles. They regularly, if not almost daily make purchases at fast food restaurants, convenience stores and local taverns. They have shopping sprees, engage in fine dining, take vacations and amazingly make regular alcohol

purchases, buy Baltimore Ravens Tickets, and make deposits on various gambling websites. There are also a number of instances of unexplained ATM, ACH, Zelle and Venmo transfers and withdrawals from their bank accounts. There are large amounts spent on tennis and soccer, religious education and camps.

At the 341 Meeting, Debtors' testified they were unable to remember nor answer various questions about their financial condition, which is rather puzzling given both Debtors' employment in the financial services industry.

The Creditor's objections are as follows:

1. The plan filed by the Debtors was not proposed in good faith.

2. The Debtors are not devoting all of their disposable income to the plan.

3. Debtor Seth Blum is still paying significant sums into a "voluntary retirement plan". Creditors should not be funding the Debtors' retirement.

4. The Debtors are purportedly paying $1,600.00 per month for child care/education. Creditors should not be funding the Debtors' private school education for their children. While Debtors indicate they are cutting child care expenses and increasing the plan payment down the road, Creditors should not be funding this expensive education for the Debtors' children now or in the future.

5. The Debtors still list $800.00 per month in entertainment expenses though the plan indicates it is being reduced to $400.00. Creditors should not be funding anything close to that amount, particularly the Debtors' country club life style. The expenses noted on the Debtors' bank statements are outrageous. These expenses include expensive restaurants, fast food restaurants, gambling, regular alcohol purchases, vacations, tennis clubs, soccer, Sirius radio, Amazon, Amazon Prime, etc.

6. The Debtors still list a $1,238,57 vehicle payment for one vehicle. Creditors should not be funding the Debtors' high brow transportation tastes.

7. The Debtors list $350.00 per month for charitable and religious donations. If that is true, Creditors should not be funding the Debtors' donations, particularly to that extent.

8. The Debtors' homeowner association/condominium payments of $700.00 per month appear implausible. If the Debtors are referring to their investment properties, this expense will soon be in large part gone given they intend to sell at least some of these properties.

9. The Debtors listed expenses as a whole appear inflated. If they are not inflated they are not reasonable.

10. The Debtors can afford to make a larger payment for a longer period of time than as proposed in their plan.

11. The Debtors have failed to account for rents received for their investment properties which are primarily summer rentals.

12. On January 21, 2025 (just 20 days after the filing of this case) and for several days thereafter, the Debtors, after advising this Court they were insolvent in their bankruptcy filings, took a trip to New York (apparently Niagra Falls) and Canada, incurring expenses at hotels, restaurants (even a Brazilian steakhouse) while out of town.

13. The Debtors' bank statements show additional out of town gasoline and hotel purchases in February 2025. The Debtors also show expenses incurred in New York City in May, 2025.

14. On January 7, 2025 (just 6 days after the filing of this case) the Debtors incurred a $499.99 gambling expense at Winbee.com. On January 16, 2025, just 15 days after the filing, the Debtors incurred gambling expenses on a DraftKings website. On January 24, 2025 the Debtors show an

additional gambling expense. These were the first of many such expenses the Debtors have incurred since the filing of this case at DraftKings, Winbee and Fanduel.

15. On January 16, 2025 Debtors purchased sporting event tickets for $1,211.82.

16. The Debtors have made regular purchases at Apple, Amazon and Amazon Prime.

17. The Debtors show regular purchases at Starbucks, Chick Fila, Burger King, McDonalds, Five Guys. convenience stores, pizza restaurants and more.

18. The Debtors show high purchases for sporting activities in their bank statements.

19. The Debtors show large payments for religious activities and camps.

20. The Debtors show small and large, Zelle, Venmo, ACH and other transfers to "Mom", other identified individuals, unidentified individuals for reasons which are murky or at best not evident.

21. The Debtors show cash ATM withdrawals.

22. The Debtors show payments for pool services and exercise equipment.

23. The Debtors show shopping sprees at King of Prussia and in Delaware.

24. The Debtors show life insurance payments.

25. The Debtors regularly incur expenses for Uber rides yet have motor vehicles.

26. This case is not filed in good faith. If the Debtors were truly insolvent the Debtors would not be engaging in the aforementioned. If the Debtors are insolvent, their Creditors should not be

funding these activities.

27. Debtors' creditors should not be funding these unnecessary and unreasonable payments and activities in which the Debtors' engage.

28. The Creditor reserves the right to raise additional objections at the hearing.

29. These and other objections will be raised at the hearing in this cause.

Wherefore, it is requested that confirmation of the plan be denied without leave to amend, and for such other and further relief as the nature of this cause may require.

s/s Richard J. Hackerman
_____
Richard J. Hackerman
3635 Old Court Road, Suite 208
Baltimore, Maryland 21208
(410) 243-8800
(410) 630 7232 (fax)
Attorney for Creditor Peter Elmo
CPF 8212010181
Richard@richardhackerman.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 18, 2025 a copy of the foregoing Notice of Appearance were mailed by first class mail, postage prepaid to the following:

Daniel M. Press, Esquire
Chung & Press, P .C.
6718 Whittier Ave., Ste. 200
McLean, VA 22101
Attorney for the Debtors.

Trustee
Monique Desiree Almy
Crowell & Moring

1001 Pennsylvania Avenue, N.W., 10th Fl
Washington, DC 20004-2595


U.S. Trustee
Hugh M. Bernstein
Office of U.S. Trustee
101 W. Lombard Street
Suite 2625
Baltimore, MD 21201


All parties on the attached mailing matrix.


/s/ Richard J. Hackerman

_____
Richard J. Hackerman
3635 Old Court Road, Suite 208
Baltimore, Maryland 21208
(410) 243-8800
(410) 630 7232 (fax)